# CHARLESTON

### DUERR *et al. v.* SNODGRASS.

Submitted September 15, 1905. Decided December 12, 1905.

1. TAXATION—*Assessment—Town Lots.*

Under section 36, chapter 29, Code, town lots should be assessed separately. But when this is not done, and several lots lying contiguous are assessed as a whole, this is such an irregularity as is cured, after deed, by section 25, chapter 31, Code. (p. 473.)

2. TAX DEED—*Description.*

It is not necessary to a valid tax deed that the same description of the land used in the delinquent list should be used in the return of sales. All that is required in either is such description as is sufficient to identify the land and give notice to the owner of the assessment or sale. (pp. 473, 474.)

3. TAX SALES—*Return of Sales—Designation of Purchaser.*

The word "Do." is used as an abbreviation for "ditto," and means the same as that which appears immediately above; and when it is used in a return of sales of land sold for taxes, to designate the purchaser, it will serve to do so if the name of the purchaser appears in the same column and immediately above such word. (p. 475.)

4. TAX SALES.

A sheriff, selling lands for taxes, is required to sell only so much thereof as will be sufficient to satisfy the whole of the taxes, interest and commissions; but he is not required to certify in the return of sales that it was necessary to sell the whole, or that he offered for sale a quantity less than the whole. And when the whole tract or lot has been sold, it will be presumed that a sale of it was necessary. (p. 476.)

Appeal from Circuit Court, Wetzel County.

Bill by A. C. Duerr and others against R. E. L. Snodgrass. Decree for defendant, and plaintiffs appeal.

*Affirmed.*

Rehearing denied January 9, 1906.

THOS. P. JACOBS, for appellants.

W. G. SNODGRASS, for appellee.

SANDERS, JUDGE :

Complaint is made that the circuit court of Wetzel county erred in dismissing the plaintiff's bill, which was brought for the purpose of setting aside and declaring void a tax deed made by the clerk of the county court of said county, to the defendant, R. E. L. Snodgrass. On the 20th day of March, 1903, Fannie M. Rogers and her husband conveyed to the plaintiffs two lots, designated as lying on the east side of Maple Avenue, in McEldowney addition, in the town of New Martinsville, West Virginia, and known on the recorded plat of said addition as lots "CB" and "H," the plat being of record in the clerk's office of the county court of said county. The taxes on these lots for the year of 1901, and while owned by Fannie M. Rogers, were not paid, and they were returned delinquent for the non-payment thereof, and on the 4th day of December, 1903, sold by the sheriff, and the defendant became the purchaser.

One of the reasons advanced for avoiding the tax deed is that the lots were improperly assessed as one parcel, it being contended that they should have been entered and assessed separately. This is not an open question in this State. In the cases of *Boggess* v. *Scott*, 48 W. Va. 316, and *Winning* v. *Eakin*, 44 W. Va. 19, it has been decided against the contention of the plaintiffs. Section 25, chapter 31, of the Code, by providing that "if more than one tract of land be charged as one * * * all such right, title, interest and estate therein, as is hereinbefore mentioned, shall nevertheless pass to and be vested in the grantee in such deed," passes good title to the purchaser, notwithstanding such irregularity. If section 36, chapter 29, Code, requires that the lots should have been assessed and valued separately, the deed could not be avoided, although this was not done, because of this provision in section 25, chapter 31, Code. This statute should not be evaded, but should be met squarely, and given the force which it was intended it should have, and when this is done, the sale must be upheld.

And, secondly, it is assigned as error that the delinquent

list described the lots as in "McEldowney Add.," while the return of sales described them as being in "Mc. Add., N. M." The delinquent list shows that these lots are situated in Magnolia district, in the county of Wetzel, and were returned in the name of Fannie M. Rogers for the year of 1901, and designated as "New Martinsville town lots CB and H, McEldowney Add." And they are described in the return of sales in exactly the same manner, except that under the heading, "Local Description," instead of saying "McEldowney Add., New Martinsville," these words are abbreviated, by using for McEldowney, "Mc.," and for New Martinsville, "N. M." Surely no one could be misled by this variance between the delinquent list and the return of sales. The lots were returned and sold in the name of Fannie M. Rogers for the year of 1901, and described as lots "CB" and "H" in Magnolia district, Wetzel county. These facts appear from both the delinquent list and return of sales, and in the delinquent list they are further described as being in the "McEldowney Add." in the town of New Martinsville, and while the return of sales does not literally follow the delinquent list in the manner of description, as above stated, yet certainly no one could be mistaken that the lots referred to in the list of sales, and sold, were the same which were returned delinquent in the name of Fannie M. Rogers for the taxes of 1901. It is not necessary to a valid tax deed that the same description of the lots used in the delinquent list should be used in the return of sales. All that is required in either is such description as is sufficient to identify the lots and give notice to the owner of the assessment or sale. And there is no doubt but what the description in both the delinquent list and notice of sales was clearly sufficient to give to the owner such notice. There is nothing here which would prejudice and mislead the owner of the lots so sold as to what portion of the same was sold, and when and for what year they were sold, or the name of the purchaser thereof. Unless this is so, under said section 25, chapter 31, Code, the title passes to and is vested in the grantee in the deed, notwithstanding any irregularity in the proceedings. Then, again, in the same section, it is said that: "No irregularity, error or mistake in the delinquent list, or the return thereof, or in the affidavit thereto, or in the list of sales filed with the clerk of the county

court, * * * shall, after the deed is made, invalidate or affect the sale or deed." The variance between the delinquent list and the return of sales, if it can be denominated a variance, is, at most, only an error or irregularity such as is cured by the curative provisions of said section of the statute. This is the plain command of the statute, which should be obeyed. It needs no construction to arrive at this conclusion, and to determine the intention of the legislature, and all the court should do is to apply it as it is found, without trying to avoid its force by strained construction.

And it is said that the deed should be canceled because the return of sales fails to show the name of the purchaser. From an examination of the list of sales, we are forced to conclude that this contention of the plaintiff is not supported. The return of sales shows that the defendant, R. E. L. Snodgrass, was the purchaser of another lot, sold in the name of Samuel Karnes, and under the heading, "Name of purchaser," R. E. L. Snodgrass, by name, is referred to as having purchased the Karnes lot, and immediately following, showing the sale of the lots returned in the name of Fannie M. Rogers, under the same heading, the purchaser is designated by the use of the abbreviation for ditto, "Do." The name of the purchaser appearing immediately above the letters "Do.," it cannot be mistaken as to what was intended by the abbreviation. In the case of *Hughes* v. *Powers*, 42 S. W. Rep. 1, 99 Tenn., 480, the court held that ditto marks are to be held as repetitions of what appears on the line above, and are as much a part of the English language as are punctuation marks, and they are often given an important, and sometimes a controlling part in the construction of general writings, and in the interpretation of legal documents and statutes and constitutions, and being regarded as a part of the language, the courts will, of course, take judicial notice of their meaning. And, also, in the case of *New England Loan and Trust Co.* v. *Avery*, (Tex.), 41 S. W. 673, the court held that ditto marks are generally understood to mean the "same as above," and that a statute requiring the index to a judgment record to contain the names of the plaintiff and defendant, is satisfied, where the same party has been defendant in several actions, by the writing of his name once as defendant in the action first indexed, and the use of ditto marks in the place

of his name in the title to the other actions. "Ditto marks. Marks which are generally understood to mean, 'the same as above.'" 14 Cyc., 552. See, also, *Miller* v. *Wild Cat Gravel Road Co.*, 52 Ind. 51; *Steinmetz* v. *Turnpike Co.*, 57 Ind. 457. Therefore, the letters, "Do.," being an abbreviation for "ditto," and meaning "the same as above," it is clear that the return of sales shows the name of the purchaser of the lots in question.

It is urged that the sheriff made no effort to sell less than the whole of these lots, and for that reason the deed should be set aside. Section 8, chapter 31, Code, provides that the sale shall be of the lot or such undivided interest therein as shall be sufficient to satisfy the whole of the taxes and commissions. This is a plain statutory requirement, and should, in all cases, be complied with. The sheriff should make an honest effort to sell as small interest as possible. But did he do so in this case? We cannot presume that he did not. An officer is presumed to do his duty, and in this case the presumption is that the sheriff offered the lots for sale as required by law, and to set aside the tax deed on this ground, the plaintiffs must overthrow this presumption. Then the question is, have the plaintiffs done so? It is true that it is shown that a much less quantity than the whole of the lots would sell for a sufficient amount to pay the taxes and charges. It appears that a one-eighth interest would easily sell for sufficient to do so. But taking all this to be true, and if nothing else appeared, the deed could not be overthrown on this ground. If so, it would be an easy matter to set aside most, if not all, tax deeds. No purchaser at a tax sale could know, nor could he, by any means, ascertain, when he is getting a good title. This showing, however, of the plaintiffs has been rebutted. It abundantly appears from the evidence that the sheriff did offer less than the whole, but received no bids, and no one says that he did not do so. Therefore, not only is the presumption here in favor of the sheriff doing his duty, but this presumption is supported by the uncontradicted testimony. Our statute does not require the sheriff to certify that it was necessary to sell the whole in order to pay the taxes and charges, or that he offered for sale a less quantity than the whole.

The decree of the circuit court is affirmed.

*Affirmed.*