[No. 5923.]

## THE CITY AND COUNTY OF DENVER ET AL. v. THE STATE INVESTMENT COMPANY ET AL.

1. **Taxation—Special Assessments—Right of Property Owner to be Heard**—To the validity of an assessment of private property to pay the cost of a public improvement, the statute authorizing it must vest in the proper public authorities power to fix the time and place of hearing objections thereto, to notify the property owner and, in case of injustice shown, alter the appraisement, and afford proper relief in the premises.—(251, 252)

Private property is not to be condemned to a public charge of this character, unless the proprietor has had opportunity to

present his objections thereto, and has actually been heard, or has waived his right to be heard.—(252)

2. ——Of the Notice—It seems that, though the notice to property owners is in strict compliance with the statute, yet, unless it appoints a certain time and place for the hearing, it is fatally defective.—(248)

3. ——Of the Hearing—Where the body having authority to correct errors and inequalities in the assessment renounces such authority and refuses to hear testimony, the proceeding cannot be regarded as a hearing, and the assessment is void.—(249, 250)

4. ——Relief in Equity—Equity will, at the suit of the property owner, annul the assessment, ascertain the just amount chargeable against the property, and, upon payment thereof into court, restrain the collection of the residue.—(254-256)

5. ——Tender—The plaintiff in such case is not required to tender any certain sum. An offer to do equity is sufficient. —(255)

*Error to Denver District Court*—Hon. F. T. JOHNSON, Judge.

Mr. H. A. LINDSLEY, Mr. CHARLES R. BROCK, and Mr. H. L. RITTER for plaintiffs in error.

Mr. JOSHUA GROZIER and Mr. ARTHUR PONSFORD for defendants in error.

Mr. JUSTICE WHITE delivered the opinion of the court:

Defendants in error, as plaintiffs in the district court, prosecuted a suit against plaintiffs in error, as defendants, to relieve lands owned by the former from the assessment of a tax for the cost of paving a street upon which the lands abutted, in Colfax Avenue Paving District No. 3 in the city of Denver. The tax or assessment was imposed, or the attempt thereto made, under the law known as the 1893 charter of the city of Denver. The provisions of the charter regulating the exercise of the power, and the procedure thereunder essential to a valid assessment, are sufficiently set forth in *Londoner v.*

*Denver*, 210 U. S. 373; and it is unnecessary to embody them herein.

Upon the trial of the cause it was admitted, or the undisputed evidence showed, each plaintiff to be the owner of a lot or fractional part thereof, abutting upon the street paved; that the paving tax assessed on each of these lots was from two to five times the value of the lot, including the improvement, and from six to fourteen times the value of the special benefit. The court found and decreed, that the assessment exceeded the special benefits to the respective lands or lots of plaintiffs, fixed the amount of the benefit as to each tract, and after the same had been paid into court, canceled the balance of the assessment and relieved the lots of the lien. To reverse that judgment the defendants have brought the controversy here.

The principal contention of plaintiffs as to the invalidity of the tax assessment was: (1) That the charter under which the improvements were made contained no adequate provisions for hearing and determining the objections of property owners to the assessments for public improvements, before the board of public works or city council; (2) That there was in fact no notice to the property owners of a time for hearing, or hearing had, upon their objections in writing properly made to such assessments; (3) That the assessments made against the property of the respective plaintiffs exceeded the special benefits thereto accruing from the paving, and to the extent of such excess the assessments were invalid.

The defendants contend: (1) That the hearings provided for by the charter, either expressly or by implication, were adequate, and if the procedure was followed, were in accordance with due process of law; (2) That plaintiffs had adequate notice and hearings in all matters of which complaint was

made; (3) That the plaintiffs failed to make a tender, before the bringing of the suit, of an amount which, in their judgment, equaled the special benefits to their respective properties by reason of the pavement, and are, therefore, precluded from questioning the validity of any portion of such assessments.

1.   That the charter under which the assessments were made contained, either expressly or by implication, adequate provisions for the hearing and determination of the objections interposed by the property owners to the proposed assessments, and in all respects complied with the constitutional requirements and the principles embodied in what is called "due process of law," has been heretofore determined by this court, and approved by the supreme court of the United States, as appears from the authorities herein cited.

Under the charter, the lien upon the abutting land for the cost of the improvement is initiated by, and finds its support in, the assessment.   Before the assessment can be legally fixed, the cost of the work and its provisional apportionment must be certified to the city council, and the landowners affected be afforded an opportunity to be heard before the city council sitting as a board of equalization, upon the validity and amount of the assessment.   Not only must the property owners, as required by statute, be given a notice, and have time in which to file complaints and objections to the proposed assessment, but under the implied power vested in the city by the charter, the city authorities must fix the specific time for hearing and give notice thereof, or in some proper way afford the property owners the opportunity to be heard, and likewise "hear the parties complaining, and such testimony as they may offer in support of their complaints and objections as would be competent and relevant."—*Denver v.*

*Kennedy,* 33 Colo. 80; *Denver v. Dumars, idem,* 94; *Denver v. Londoner, idem,* 104; *Londoner v. Denver,* 210 U. S. 373.

2. In the case at bar, after the paving was completed, a statement of the cost thereof, and an apportionment of it to the lots or land abutting upon the street, was certified to the city clerk; who thereupon, in compliance with the provisions of the charter, published a notice to the effect that the written complaints or objections of the owners, if any, should be filed within thirty days, and that before the passage of an ordinance assessing the costs of said improvements, "the city council, sitting as a board of equalization, shall hear and determine all such complaints and objections." This notice complied with the express statutory requirements, but it is not so certain that it fixed the time for hearing with any certainty, and, therefore, probably failed in one of the essential requirements without which, or a waiver thereof, no valid assessment could have been made. The city authorities, under the implied powers vested in them by the charter, should have given a notice of the time and place of hearing. The notice given seems to be no different in substance and effect from the notice under consideration in the Londoner case, *supra,* and as therein said: "The notice purported only to fix the time for filing the complaints and objections, and to inform those who should file them that they would be heard before action," and "did not fix the time for hearing."

However, should we be mistaken in our view of the effect of the notice given and it could be held to properly mean that immediately after the expiration of the thirty days, in which objections could be filed, the council, sitting as a board of equalization, would hear and determine such objections, yet the city authorities had no power to impose the lien

for the assessment upon the lands benefited, unless the property owners, by some act, waived their right to have, or actually had, a hearing upon their objections to the assessment.

Defendants contend, in effect, that the property owners in fact had a hearing as contemplated by the charter; that, after filing their written complaints and objections to the assessment, they appeared before the city council, sitting as a board of equalization, either in person or by attorney, and orally presented their testimony and views concerning the assessment. As declared by the supreme court of the United States in the Londoner case, *supra:* "Many requirements essential in strictly judicial proceedings may be dispensed with in proceedings of this nature." If, after filing their complaints and objections to the assessment, the parties, without further notice, appeared before the tribunal authorized to act, and assuming to exercise the power, and were permitted to present their testimony and other evidence competent and relevant to the matter under consideration, and to support their contentions by argument, it may be, though as to that we do not determine, such procedure was "a hearing within the meaning of the law." The very essence of a hearing, however, is the right, not simply the privilege, "to support one's contention or position by argument, however brief; and, if need be, by proof, however informal" before a tribunal authorized to act and willing and ready to do so. —*Stuart v. Palmer,* 74 N. Y. 183.

We are unable to agree with counsel that plaintiffs appeared and had a hearing. The complaint alleges that, without hearing, or opportunity for hearing, though requested, none of the plaintiffs were afforded or given any opportunity to present any testimony or evidence whatsoever; but, on the

contrary, the written protests were, without hearing thereon, disregarded, and the confiscatory assessments made without due process of law. A fair interpretation of the evidence seems to support and establish these allegations, and the court in its decree found "that the allegations of the complaint are, and each of them is, true." A recitation of some of the evidence of the property owners will disclose the nature of the alleged hearing, to-wit: "The board of equalization permitted me to talk, as they also did Colonel Swallow, and possibly one or two other property owners present, but refused to take any testimony, and no testimony under oath or otherwise was taken or hearing had. * * * This permission to talk was granted as a matter of favor and not as a matter of right. * * * Several members of the board of equalization also spoke," and said: "they had no such power (to make any change in the amount of the assessment as fixed by the board of public works), and gave that as a reason for declining to take testimony."

The conclusions most favorable to defendants' contention as to what occurred, are that plaintiffs, or some of them, appeared before the council in response to a notice from that body to present in writing any objections or complaints they might have to the assessment, and then and there claimed that the proposed assessment was confiscation of their property; that there was an informal talk or protest made by the plaintiffs or in their behalf, against the assessment; that the council from its own membership appointed a committee to examine the property; that such committee, or some member thereof, made a verbal report to the effect that the lots, including the benefit thereto by the paving, were worth about one-half of the amount of the assessment on such lots respectively, and the council took

the position that neither it nor the members thereof, sitting as a board of equalization, had the power to in any manner change the assessment as certified by the board of public works; that while recognizing it would be just and proper to grant the relief to plaintiffs, the board of equalization and the city council were powerless to act in the premises, as it would invalidate the assessment in the entire district, and there was no reason for hearing evidence thereon. It is certain that such procedure did not constitute a hearing within the meaning of the law. The record discloses that then, and for some time prior thereto, the general impression maintained, and such is said to have been the holding of the *nisi prius* courts, that the provisions of the charter rendered the city and the city council, as a board of equalization, powerless to do otherwise than assess the entire cost of public improvement made thereunder upon the property benefited, as directed by the board of public works, without change, and not otherwise. It is clear that it was by reason of this mistaken view of the power of the council that prevented that body from hearing evidence and argument, and granting the relief demanded by the plaintiffs.

It was essential, in order to uphold the constitutionality of the assessment provisions of the charter, and the supreme court of the United States so held in the Londoner case, *supra,* that there be vested in the city council implied power to not only fix the time and place for a hearing and notify the complaining property owners thereof, but likewise implied power vested in such body to alter the apportionment and grant proper relief in the premises.

Unless the law authorizing the assessment, expressly or by implication, provides for notice to the owner of the property to be affected and gives him

an opportunity.to be heard at a specified time and place, before a board or tribunal competent and ready to administer proper relief, concerning the correctness of the charge before it is made conclusive, the constitutional guarantee, that no person's property shall be taken without due process of law, has been infringed.—*Brown v. City of Denver*, 7 Colo. 305. Notice or citation of the time and place for hearing, or possibly a waiver thereof by the property owner, was, therefore, essential to vest in the council the power to create a valid lien for the cost of the improvement, and it was likewise essential that the hearing be before a tribunal competent to act. The denial to a party in such a case of the right to appear and to be fully heard is, in legal effect, a recall of the citation to him.—*Windsor v. McVeigh*, 93 U. S. 274. And to notice or cite a party to appear, or the appearance of such party before a tribunal competent to administer proper relief, but which assumes that it does not possess the power—that though it be commanded by law to hear, it is by the same law rendered deaf to the appeals of justice and refuses to take evidence and act—is in no sense affording the party a hearing within the meaning of the charter, and is not a compliance with the constitutional requirement of "due process of law." It is, in effect, saying to a person: "Appear, and you shall be heard"; and when he has appeared, saying: "Your appearance shall not be recognized, and you shall not be heard." A judgment, finding, or decree, rendered under such circumstances, is an arbitrary edict without the sanction of law. As stated by Brannon in his work on The Fourteenth Amendment, p. 251: "Though there be service of process, yet if the defendant is not allowed to make his defense, it is a withdrawal of the summons, 'a denial of the benefit of a notice, and would in effect

be to deny that he was entitled to notice at all, and the sham and deceptive proceeding had better be omitted altogether,' because judgment without hearing is void.''

The city council admitted, and the defendants concede, the assessment amounted to confiscation of the property of plaintiffs, and that the owners were entitled to a reduction of the assessment, and the council ''stated they would like to remedy it, but did not know how they could do so without themselves violating the charter assessment provisions.'' It certainly cannot be said that a party has had a hearing when he has been called to appear, or appears, before a tribunal with power to act and grant relief, and which recognizes that such party is entitled to the relief for which he prays, yet disclaims in itself power and authority in the premises and refuses to hear evidence and act upon the matter. The right to property and the guarantee that it shall not be taken without due process of law, does not rest upon a basis so unsubstantial.

3. As the lien rests upon the assessment, and the latter, as we have seen, is invalid, the lien must necessarily fall. And as there can be no obligation to pay until there is a legal assessment, the doctrine of tender before suit brought, has no application. No one is under obligation to pay or tender payment, until there be something due. This is not a case where the procedure was lawfully followed, and the authority exceeded by an excessive assessment, but it is a case showing such a departure from the prescribed procedure that the assessment attempted to be made had no validity as against the property of plaintiffs. The language of the court in *Norwood v. Baker*, 172 U. S. 269, is peculiarly applicable to this case. It is there said:

"The present case is not one in which—as in most of the cases brought to enjoin the collection of taxes or the enforcement of special assessments—it can be plainly or clearly seen, from the showing made by the pleadings, that a particular amount, if no more, is due from the plaintiff, and which amount should be paid or tendered before equity would interfere. It is rather a case in which the entire assessment is illegal. In such a case it was not necessary to tender, as a condition of relief being granted to the plaintiff, any sum as representing what she supposed, or might guess, or was willing to concede, was the excess of cost over any benefits accruing to the property. She was entitled, without making such tender, to ask a court of equity to enjoin the enforcement of a rule of assessment that infringed upon her constitutional rights."

We have never held, that a tender of the amount of the special benefit was a condition precedent to a property owner maintaining a suit in equity, to relieve his property from an alleged lien arising out of a void assessment. On the contrary, in *City of Denver v. Londoner, supra,* and other cases herein cited, the owners of the property upon which the assessments were made, were held not to be entitled to relief in the suit instituted by them, because the assessment against their property was merely erroneous by being excessive, and they had not, prior to bringing the suit, tendered to the proper authorities the amount due which would have been a valid assessment against their property, and it is therein expressly pointed out that the assessment was not void, but merely erroneous. The supreme court of the United States, to which that case was carried, and hereinbefore cited as *Londoner v. Denver,* determined that a hearing, or an opportunity therefor, to the property owners had not been allowed, and that

the assessment was, therefore, void, and the property owners were entitled to a decree discharging their lands from a lien on account of it, notwithstanding they had made no tender of the amount of the special benefits accruing to their property by reason of the improvement.

The trial court held, that the testimony showed that the plaintiffs, either by themselves or their representatives, made protest to the city authorities against the excessive assessment, but were informed that the front footage plan had been recommended by the board of public works, and that the city authorities had no authority to change it and were unable to render any relief whatever by way of decreasing the amount of assessment contemplated, and, under the circumstances, a tender would have been useless, and as the parties had offered to do equity by paying into court the amount of benefits which the court should adjudge reasonable, there was a sufficient tender to meet the requirements of law and equity. Whether this view was correct is not necessary to determine, as the assessment was void for the lack of a hearing.

Furthermore, it is apparent there was no necessity upon the part of plaintiffs, at or prior to the institution of this suit, to make a tender, even though we were to assume that the assessment was merely erroneous, and not void. While it has been held by this court that where property is excessively assessed for public improvements, but the procedure in making the assessment was regular, the owners, in order to maintain an action to annul the excessive part of the assessment, must first tender to the proper authorities the amount that should have been assessed, we do not understand that such tender should be of any greater sum than is then due and payable. In the case at bar, the record discloses, that no part of the

assessment was due, nor could any portion thereof presently become due, except by action of the property owners exercised under the provisions of the charter.—§ 34. The assessing ordinance went into effect on the 29th day of August, and the suit for relief was filed on the 31st day thereof. Plaintiffs in their complaint, while denying the validity of the entire assessment, nevertheless alleged their willingness to pay any part thereof that was properly chargeable, or was a special benefit accruing to their property by reason of the improvement, and further "offers and tenders the same to said defendant * * * or into court at any time, and to keep said tender and offer good whenever the same shall be ascertained or on demand, and to do equity in the premises." Plaintiffs thereafter paid into court, for the defendants, the full amount which the latter could justly have established as a lien upon the former's property, and, under the circumstances, sufficiently complied with all the rules of equity to entitle them to maintain their suit for relief.

The judgment of the court was manifestly just and proper, and we can perceive no reason why it should be disturbed. It is, therefore, affirmed.

Decision *en banc*.                    *Affirmed.*