STATE ex rel. FREEZE, Respondent, v. TAYLOR et al., Appellants.

(No. 6,810.)

(Submitted September 29, 1931. Decided October 17, 1931.)

[4 Pac. (2d) 479.]

*Mr. H. C. Packer* and *Messrs. O'Hara, Madeen & Grant,* for Appellants, submitted a brief; *Mr. Robert A. O'Hara* argued the cause orally.

*Mr. J. D. Taylor* and *Mr. E. M. Tucker,* for Respondent, submitted a brief; *Mr. Tucker* argued the cause orally.

*Mr. Harry H. Parsons,* of Counsel for Respondent, submitted a supplemental brief.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

This proceeding grew out of an attempt by certain electors of Ravalli county to consolidate the county and all cities and towns therein into a municipal corporation to be known as the City and County of Ravalli, under the provisions of Chapter 121 of the Session Laws of 1923.

It appears that a petition, signed by 909 persons who represented themselves to be qualified electors of Ravalli county, being more than twenty per cent. of the electors thereof, whose names appeared on the great register on the date of the filing of the petition, requesting that the question of consolidation be submitted to the qualified electors of the county, was filed with the county clerk on the fourth day of August, 1930. On the same day, the county clerk delivered to the board of county commissioners, then in session, the petition with his certificate thereto attached, that "there are 4,274 registered voters in Ravalli county, at date of filing attached petition, and I further certify that there are 909 qualified electors signing such petition, which constituted more than twenty per cent. of the registered electors of said county." On the next day, there was filed with the county clerk a petition signed by 118 of the persons who had signed the original petition, requesting that their names be withdrawn therefrom. The county clerk immediately certified that petition to the board. After the lapse of ten days, the board having failed to take any action, relator brought this action in mandamus, praying that the court order the board to issue a proclamation calling for the election, and fixing a date therefor. Thereupon an order to show cause and an alternative writ of mandate were issued. Upon the hearing, the court ordered issued a peremptory writ commanding the board of county commissioners to "issue a proclamation containing the things required by law and particularly the purpose for which such special election is to be held and the date of holding the same, which proclamation must be published and posted in the manner prescribed by law." From this order, the defendants, as the board of county commissioners of Ravalli county, have appealed.

Chapter 121, referred to above, is "An Act Authorizing and Providing for the Consolidation and Merging of the Corporate Existence and Government of any County in the State and of all Cities and Towns Situated Therein Into One Municipal Corporation and Government, Defining the Powers Thereof and

Providing a Commission-Manager Plan of Government there-for.''

Section 2 of the Act provides: ''The question of the abandonment and termination of the separate corporate existence and government of a county and of each and every city and town therein and the consolidation and merging of the existence and government of such county and each and all of the cities and towns therein into one municipal corporation and government, under the provisions of this Act, shall be submitted to the qualified electors of such county if a petition be filed in the office of the county clerk of such county, signed by at least twenty per centum (20%) of the electors of said county whose names appear on the official register of voters of the county on the date of the filing of such petition, requesting that such question be submitted to the qualified electors of the county.''

Section 3: ''Such petition shall be substantially in the form and shall be signed, verified and filed in the manner prescribed in this Act for initiative, referendum and recall petitions, and shall designate therein the name by which such consolidated government is to be known, which must be either that of the county or of some one of the cities or towns therein. If the county clerk shall find that such petition, or amended petition, so filed, is signed by the required number of qualified electors he shall so certify to the board of county commissioners of such county at their next regular meeting, and such board shall thereupon, and within ten days after receiving the clerk's certificate, order a special election to be held at which election such question shall be submitted to the qualified electors of the county. Such order shall specify the time when such election shall be held, which shall be not less than ninety nor more than one hundred and twenty days from and after the day when such order is made, and the board of county commissioners shall immediately upon making such order issue a proclamation setting forth the purpose for which such special election is held and the date of holding the same, which proclamation must be published and posted in the man-

ner prescribed by Section 535 Revised Codes of Montana of 1921."

Subsequent sections, *inter alia*, relate to the enactment of ordinances by the commission, the governing body of the municipality, and to the exercise of the powers of initiative and referendum by the electorate with respect thereto.

Section 20 provides that if an initiative petition "be found sufficient by the clerk he shall so certify and shall submit the ordinance therein set forth to the commission at its next meeting. * * * " Section 21 is to the effect that if the commission fails to enact the ordinance proposed by the initiative petition, or passes it in a form different from that set forth in the petition "the committee of the petitioners hereinafter provided for may require that it be submitted to a vote of the electors," and so forth. Section 26 provides: "If a referendum provision, or amended petition, be found sufficient by the clerk he shall certify that fact to the commission at its next regular meeting," and a course of action is prescribed. Section 29 provides that "the signatures to initiative, referendum or recall petitions need not all be appended to one paper, but to each separate petition paper there shall be attached an affidavit of the circulator thereof as provided by this section. Each signer of any such petition paper shall sign his name in ink or indelible pencil and shall indicate after his name his place of residence by street and number, or other description sufficient to identify the place. There shall appear on each petition paper the names and addresses of five electors of the municipality, who, as a committee of the petitioners, shall be regarded as responsible for the circulation and filing of the petition." Following which is the form of the affidavit required.

A consideration of these statutes leads to the conclusion that the sufficiency of the petition is to be determined by the clerk, not by the board of county commissioners. (*Laam* v. *McLaren*, 28 Cal. App. 632, 153 Pac. 985, 988; *Locher* v. *Walsh*, 17 Cal. App. 727, 121 Pac. 712.) Under the terms of the Act, when a petition, duly certified by the clerk, has been filed with

the board, it then has the clear duty of ordering the election, in accordance with the statute. It is, of course, true that a petition void upon its face would not impose an obligation to act; otherwise it is not within the board's province to question it.

The withdrawal petition came too late. After the county ██ clerk had certified the petition to the board of county commissioners, his action thereupon was final, and his function with respect thereto was ended. Those signing the original petition had a right to withdraw therefrom at any time before final action thereon, but not afterward. The general rule is that where a petition of a certain number of electors is required to initiate proceedings for a public purpose, any person signing the petition has an absolute right to withdraw his name at any time before the person or body created by law to determine the matter submitted by the petition has finally acted. (*State ex rel. Lang* v. *Furnish,* 48 Mont. 28, 134 Pac. 297, and cases cited.) None of the authorities recognize the right to withdraw from the petition after the same has been finally acted upon by the person or board. (Note to *Sim* v. *Rosholt,* 11 L. R. A. (n. s.) 372 (16 N. D. 77, 112 N. W. 50), and see *State ex rel. Andrews* v. *Boyden,* 21 S. D. 6; 15 Ann. Cas. 1122, 108 N. W. 897.)

The sufficiency of the petition is challenged as a matter of ██ law for two reasons: (1) There do not appear on each petition paper the names and addresses of five electors of the municipality who are to act as "a committee for the petitioners" in accordance with the provisions of section 29; but an inspection of the provisions of the Act discloses clearly that the only function of this committee is to represent the petitioners in the enactment of ordinances where the referendum power is invoked (see sections 21, 23, 25), and this has to do with conditions obtaining after the new municipality is created. Naming five electors as a committee in the various petition papers in this matter would have been a useless formality. Otherwise, the petition substantially complies as to

form with section 29, and it is verified precisely as provided for in that section.

(2) Section 29 directs that the elector shall indicate after ▮ his name his place of residence by street and number, or other description sufficient to identify the place, and it is argued that a large number of the signers did not comply with this requirement. Twenty-nine did not follow their names with any information as to residence. These may be eliminated, and still there remain more than the necessary twenty per cent.

It is insisted that the use of the ditto mark by a large number of the others renders the petition insufficient. For instance: Under the heading "Names, Residence, Precincts," an elector signed his name, followed it with "Darby, Mont." and with the figure "2." The next elector signed his name, and put down "Darby" with a ditto mark under "Mont." with the figure "2." Others followed his example. In Grantsdale, most of the signers put down "Grantsdale" with a ditto mark under "Mont.," following their names with the figure "3," under the words "Precincts No." In Hamilton, some followed their signatures with "Hamilton, Mont.," others with "Hamilton," with a ditto under "Mont.," and with a figure designating the voting precinct, while others also gave their street numbers. In Corvallis, nearly all wrote the name of the town; some employed the ditto mark. The name of the precinct usually was given. The same is true of Victor, Stevensville, and other towns in the county.

The use of the ditto mark was a sufficient compliance with the statute. In *Wilson* v. *Bartlett*, 7 Idaho, 271, 62 Pac. 416, 418, it appeared that a person signed his name to the petition and the name of the precinct in which he lived was written opposite his name. Subsequent signers simply made the ditto mark, indicating thereby that they resided in the same precinct as the signer next preceding. The court said: "While it might be better for each signer to write in full the name of the precinct in which he resides, yet we think the ditto mark, which has a meaning well understood by all the

people, was sufficient in this case." A more elaborate discussion, but reaching the same conclusion, will be found in *People ex rel. Arfman* v. *Newell,* 49 Colo. 249, 113 Pac. 643. (And see *Hughes* v. *Powers,* 99 Tenn. 480, 42 S. W. 1; *Duerr* v. *Snodgrass,* 58 W. Va. 472, 52 S. E. 531.)

We cannot say from an inspection of the petition that it did not give to the county clerk, who was charged with the duty of determining its sufficiency, all the information the statute requires. He satisfied himself from the petition that the signers were electors of Ravalli county. None of the towns are large, and it is apparent that the description given by each elector (save the twenty-nine) conveyed to the mind of the county clerk sufficient information as to the elector's residence.

The people have reserved to themselves the right to the exercise of the powers of initiative and referendum. Statutes enacted in aid of these powers "should be liberally construed, and should not be interfered with by the courts, except upon a clear showing that the law is being violated." (*Laam* v. *McLaren,* supra.)

There is not any allegation, nor was there any contention, in the court below, that the signatures appearing in the petition were not the genuine signatures of the electors, nor that anyone had given a wrong address, nor that anyone was or could be misled by the addresses given. It is not asserted that anyone familiar with the locality could not straightway have found the elector by reference to the address given. Indeed, when the matter was submitted to the court for its decision, counsel for defendants observed that it seemed to him that the question presented was purely one of law.

The order is affirmed.

ASSOCIATE JUSTICES GALEN, FORD, ANGSTMAN and MATTHEWS concur.