STATE EX REL. PECK, APPELLANT, v. ANDERSON, RESPONDENT.

(No. 6,962.)

(Submitted June 13, 1932. Decided July 9, 1932.)

[13 Pac. (2d) 231.]

*Mr. Louis P. Donovan* and *Mr. Henry McClernan,* for Appellant, submitted a brief; *Mr. Donovan* argued the cause orally.

*Mr. Walter Knaack* and *Mr. D. W. Doyle,* for Respondents, submitted a brief; *Mr. Doyle* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

M. L. Peck, on behalf of himself and others alleged to constitute more than two-thirds of the resident freeholders of the town of Sweet Grass, applied to the district court of Toole county, in which the town is situated, for a writ of mandate to compel the board of county commissioners of that county to order that the incorporation of the town be discontinued.

The complaint filed alleges that, on October 6, 1931, a petition was presented to the county clerk who, on November 12, certified that it was signed by more than two-thirds of the resident freeholders of the town, and that, as so signed and certified, the petition was presented to the board of county commissioners on December 7, but that the board refused to act upon the petition, and thereafter, on December 9, passed a resolution laying the petition "on the table." An alternative writ was issued, to which the board answered, admitting all allegations of the complaint except that the petition was signed by at least two-thirds of the resident freeholders of the town; instead the answer alleges that "at the time of filing the

petition there were not less than eighty-two resident freeholders in and of'' the town, and that the petition was signed by ''not to exceed fifty-three'' thereof. By way of affirmative defense, the defendants alleged that the clerk's certificate was ''false and untrue'' in that the clerk overlooked two resident freeholders in making his count and counted as signers two persons who were not freeholders ''at the time of filing,'' and one who did not sign the petition; that the board was informed and believed that three signatures were not genuine and that certain deeds were executed and recorded without delivery to the vendees, in qualifying them to sign the petition, and that, on December 8, four signers requested the withdrawal of their signatures for the alleged reason that they had been induced to sign by misrepresentation and fraud.

The petition is not before us, and we are not advised as to the number of names thereon, but it would seem that defendants' position is that, deducting some ten names as not legally on the petition, or withdrawn, the petition contains but fifty-three qualified signers.

All allegations of the answer are denied by reply.

On the matter being called up for hearing, counsel for the relator moved that a peremptory writ issue, as the answer tendered no material issue and was insufficient to constitute a defense. The motion was overruled, and, the relator refusing to introduce any testimony, defendants moved for judgment of dismissal, which motion was sustained. Relator has appealed from the judgment of dismissal.

The case turns upon the construction to be placed upon the provisions of Chapter 3, Laws of 1931, amending section 4974, Revised Codes 1921, and presents but two questions for determination, to-wit: (1) Does the Act authorize the county clerk to pass upon and certify to the sufficiency of the petition as to signatures; and, if so, (2) is the clerk's certificate conclusive?

The Act provides that ''whenever it appears by * * * census that a * * * town has a population of less than five hundred (500) * * * the corporate existence * * * may be discontinued, upon the filing of a petition * * *

signed by at least two-thirds (⅔) of the resident freeholders of said * * * town, as certified to by the county clerk * * * with the board of county commissioners. * * * Upon the filing * * * the said board must declare by ·resolution, that the incorporation thereof be discontinued.''

In construing a statute, we must ascertain and give effect to the intention of the legislature, and that intention must, if possible, be gleaned from the language employed (*State ex rel. Carter* v. *Kall*, 53 Mont. 162, 5 A. L. R. 1309, 162 Pac. 385; *State ex rel. Goodman* v. *Stewart*, 57 Mont. 144, 187 Pac. 641; *State* v. *Bowker*, 63 Mont. 1, 205 Pac. 961); a supposed unexpressed intention cannot override the clear import of such language (*Equitable Life Assur. Co.* v. *Hart*, 55 Mont. 76, 173 Pac. 1062). Resort should first be had to the ordinary rules of grammar. (*In re McDonald*, 50 Mont. 348, 146 Pac. 942.)

The grammatical construction of a sentence is an aid to its interpretation, and, in the absence of a clear intention, as disclosed by the text, to give to the Act a meaning contrary to that disclosed by an analysis of the sentence from a grammatical standpoint, we must elicit the intention of the legislature from the expressions employed, ''calling to our aid the ordinary rules of grammar.'' (*Jay* v. *School District*, 24 Mont. 219, 61 Pac. 250, 252.) Thus the rules of grammar become rules of law, and this court has said: ''It is a rule of law as old as the law itself, that a relative clause shall be construed to relate to the nearest antecedent that will make sense. * * * Qualifying words, phrases, and clauses are to be applied to the words or phrase immediately preceding, and are not to be construed as extending to or including others more remote, unless such extension is clearly required by a consideration of the entire Act.'' (*State* v. *Centennial Brewing Co.*, 55 Mont. 500, 179 Pac. 296, 298.)

Calling to our aid the ordinary rules of grammar and particularly those above quoted, we find that the first sentence of the Act under consideration is made up of a main clause, ''the corporate existence of such * * * [a] town

° * * may be discontinued," modified by the subordinate clause, "whenever it * * * has a population of less than five hundred (500)," followed by the adverbial clause, "upon the filing of a petition," which relates to and modifies the nearest antecedent verb "discontinued," and the adjective clause, "signed by at least two-thirds (⅔) of the resident freeholders," which relates to and modifies the nearest antecedent noun "petition."

The next clause is that upon the construction of which, with reference to its antecedent, the determination of the question of duty and authority hinges, i. e., "certified to by the county clerk," which clause is introduced by the conjunction "as." If the legislative intention was that this clause should relate to the remote antecedent "petition," the verb "certified" should be parallel in construction with the verb "signed," which construction could only be effected by the use of the conjunction "and" in the place of "as."

According to its use, the conjunction "as" may be either an adverb or a relative pronoun; if it is here used as a relative pronoun, the clause under consideration is an adjective clause the antecedent of which, under the rule quoted, is the noun "freeholders"; it cannot modify "resident freeholders," for it can only relate to a noun, and "resident" is an adjective modifier of the noun "freeholders." This construction would require the clerk to certify a list of all freeholders of the town, a construction which would not "make sense," as a freeholder is but the owner of an estate in fee in land, and any number of such owners might reside outside the town or state; such a list would be of no value to the board.

However, if "as" is used in the sentence as a conjunctive adverb, the clause which it introduces is an adverbial clause which modifies, not an antecedent noun, but its nearest antecedent clause, which, in the instant sentence, is "by at least two-thirds of the resident freeholders," which clause modifies the verb "signed." This is the only reasonable, and consequently the true, interpretation to be placed upon the sentence under consideration; thereunder the Act authorizes the county

clerk to certify to the fact that the petition is signed by the required number of resident freeholders of the town. The duty thus imposed upon the clerk carries with it the implied power, necessary to enable him to perform the duty imposed, of investigating and determining who are the resident freeholders of the town, and whether or not the signatures to the petition are genuine, and whether or not the total number of bona fide signers of the petition constitute at least two-thirds of the resident freeholders of the town. As to implied powers, see *In re Farrell*, 36 Mont. 254, 92 Pac. 785, and 46 C. J. 1032. Our conclusion is fortified by the language employed by the legislature in the succeeding sentence: "Upon the filing of said petition as above provided, with the board of county commissioners, the said board must declare by resolution, that the incorporation thereof be discontinued." This pronouncement presupposes that the petition is perfected and sufficient at the time of filing.

It follows that ordinarily the certificate made by the clerk ██ ██ under the mandate of Chapter 3, above, is conclusive, and, on the filing of the certified petition, the board must make the designated order. (*State ex rel. Freeze* v. *Taylor*, 90 Mont. 439, 4 Pac. (2d) 479, 481.) However, while it is said in the *Freeze Case* that the determination is to be made by the clerk and not the board, and therefore, unless the petition is void on its face, "it is not within the board's province to question it," the court was there dealing with the fact conditions presented; no question as to the signatures or bona fides of the signers was raised, but simply the question of withdrawals after certification. In support of our declaration that the clerk's certificate was conclusive on the board, we cited *Laam* v. *McLaren*, 28 Cal. App. 632, 153 Pac. 985, 988, and *Locher* v. *Walsh*, 17 Cal. App. 727, 121 Pac. 712, in each of which the pronouncement is qualified by the clause, "in the absence of fraud or mistake." In the *Laam Case* the court suggests the "signatures might be forged or the signers might not reside in the city * * * in such a case we would not say that the clerk's certificate was conclusive, or that mandamus would not lie." This is a proper limitation to the rule. If

the allegations in the answer here filed should be proven true, and the board nevertheless obeyed the mandate of the statute, a court would be authorized to interfere and prevent the action of the board from becoming effective. (22 R. C. L. 491.)

The certificate of the clerk imports verity, but, if it can be clearly shown that he was mistaken in his compilation and that the petition does not in fact carry the signatures of the required qualified signers, objectors should be permitted to make the showing before the tribunal authorized to order the disincorporation of the town, i. e., the board, and it is a familiar maxim that fraud cuts down everything. Here, however, the board took no action on the petition, and no showing was made of either fraud or mistake, either before the board or the court.

The clerk's certificate made out a prima facie case for the issuance of the writ; the allegations of the answer merely tendered a defense, and they were all denied; consequently the court could not consider them, and, on failure of the defendants to offer proof in rebuttal of the prima facie case made, the writ should have issued commanding the board to act on the petition.

However, as the charge is made that the clerk was mistaken in certifying that the petition is signed by the requisite two-thirds of the resident freeholders of the town, and that the petition is tainted with fraud, the writ issued should not command the making of the order of disincorporation. If, on a hearing before the board objections are regularly interposed to the petition on the ground of fraud and mistake and such allegations are proved true, the board has the implied power to disallow the petition.

As to the alleged withdrawals from the petition, since the duty to ascertain and certify the sufficiency of the petition is imposed upon the county clerk, the attempt to withdraw the day after the petition, as certified by the clerk, was filed and presented to the board, came too late (*State ex rel. Freeze* v. *Taylor*, above); but it is charged that this attempt was made

because the signers so attempting learned that representations made to them as an inducement to sign the petition, and on which they relied, were false. Such misrepresentations of material facts, if made with the intent to induce action, constitute fraud (*Emerson-Brantingham* v. *Anderson,* 58 Mont. 617, 194 Pac. 160), and would be sufficient, on timely assertion, to avoid the most solemn contract.

We do not say that the withdrawals in the instant case should be allowed, even if the facts alleged should be proved true; the matter must be determined by the board on the proof adduced. In order to avoid being bound by his act, although induced to perform it by fraudulent misrepresentations, a party must act promptly on learning of the fraud, or he will be deemed to have waived his right to rescind. (*Lasby* v. *Burgess,* 88 Mont. 49, 289 Pac. 1028.) What delay constitutes laches depends upon circumstances shown.

Here the signers had the absolute right to withdraw before final action by the clerk. (*State ex rel. Lang* v. *Furnish,* 48 Mont. 28, 134 Pac. 297.) Thus they had the period elapsing between October 6 and November 12, and, if they discovered the falsity of the representations, if they were false, during that period they should have withdrawn their names from the petition before the clerk's certification on the latter date. If, on the other hand, it appears that the discovery postdated November 12, and the proof of the fraud is clear and convincing, the withdrawals should be allowed.

The judgment is reversed and the cause remanded to the district court of Toole county, with direction to issue a peremptory writ of mandate compelling the respondent board to act upon the petition filed.

Mr. Chief Justice Callaway, Associate Justice Angstman, Honorable Wellington H. Meigs and Honorable Lyman H. Bennett, District Judges, sitting, respectively, in place of Associate Justices Galen and Ford, disqualified, concur.