STATE ex Rel. DURLAND, Relator, *v.* BOARD OF COUNTY COMMISSIONERS OF YELLOWSTONE COUNTY et al., Respondents.

(No. 7,672.)

(Submitted January 18, 1937.  Decided January 26, 1937.)

[64 Pac. (2d) 1060.]

*Messrs. Crippen & Crippen,* for Relator, submitted a brief; *Mr. H. C. Crippen* argued the cause orally.

*Mr. George S. Smith,* County Attorney of Yellowstone County and *Mr. Franklin A. Lamb,* Deputy County Attorney, for Respondents, submitted a brief; *Mr. Smith* argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

This is an application by the State, on the relation of the county surveyor of Yellowstone county, for a writ of mandate to compel the county commissioners of the county to make effective the provisions of section 1622.1 of the Revised Codes. The subject of the section as it appears in the Codes is as follows: ''County surveyor's duties in counties having total registered vote of fifteen thousand or over at last general election—salary.'' The pertinent part of the section reads as follows:

''The county surveyor of all counties having a total registered vote of fifteen thousand (15,000) or over, at the last general election shall have exclusive control, supervision and direction of all highways; * * * and shall receive an annual salary for performing the duties of said office in the amount of three thousand six hundred dollars ($3,600.00) per annum

to be paid out of the contingent fund of the county in which he holds office."

Immediately previous to, and on the day of, the last general election, November 3, 1936, there were 16,887 registered voters in Yellowstone county; only 14,390 votes, however, were cast at the election.

Subsequent to the election, the relator filed with the board of county commissioners a written demand that the commissioners transfer jurisdiction of the highways to him by virtue of the provisions of the above section, so that he might have and enjoy all the rights, authority, and perquisites provided by the section. The commissioners considered the matter, and, by minute entry, denied the request. The county surveyor then applied to this court for a writ of mandate to compel the county commissioners to make the provisions of the section effective in Yellowstone county.

The commissioners, as respondents, filed answer admitting most allegations of the petition, but alleging that the term "registered vote," as it appears in section 1622.1, means the total vote cast at the election, as distinguished from the total number of electors who were registered and entitled to vote. Thus the issue before us is narrowed to an interpretation of the provision with relation to the effective date of the section. The statute is not attacked by either party in any other particular.

It is admitted by both parties that the section may take effect under certain conditions, and thus the case differs from the cases wherein we have been required to say whether a statute could be workable in any event. In reality, the proceeding is merely directed toward obtaining a construction and interpretation of the effective time of the statute.

Counsel in their briefs and oral arguments have devoted much time to technical, grammatical, and legal constructions, and to definitions of the terms "vote" and "registered vote," and have endeavored to cite cases and authorities bearing on that question. No decisive or controlling authority, however,

has been cited to reach the specific point, and we have likewise been unable to find such an authority. We are, therefore, thrown back to the general rules ordinarily employed and controlling in the construction of statutes. It is important to understand our own statutes on that subject. Sections 10519 and 10520, Revised Codes, read as follows:

Section 10519: "In the construction of a statute or instrument, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all."

Section 10520: "In the construction of a statute the intention of the legislature, and in the construction of the instrument the intention of the parties, is to be pursued if possible; and when a general and particular provision are inconsistent, the latter is paramount to the former. So a particular intent will control a general one that is inconsistent with it."

This court has frequently said: "It is the duty of this court ▉▉▉ to construe the law as it finds it." (*Montana Beer etc. Assn.* v. *State Board of Equalization,* 95 Mont. 30, 25 Pac. (2d) 128, 130, and cases cited.) In the same case it was said: "In construing a statute, ordinarily, the words employed must be given their usual meaning, unless it is made apparent from the context of the subject that a different one was intended." (Citing authorities.)

In a very early opinion (*Smith* v. *Williams,* 2 Mont. 195), it was said: "Statutes should be their own interpreter. Courts must look at the language used, and the whole of it, and derive therefrom the intention of the legislature. Where this intention is obvious there is no room for construction. When the language is plain, simple, direct and without ambiguity, the Act construes itself, and courts must presume the legislature intended what it plainly says. It is only in the case of ambiguous, doubtful and uncertain enactments that the rules

and principles of interpretation can be brought into requisition. It is not allowable to interpret what has no need of interpretation." The statement was founded upon judicial interpretations and declarations of many courts; liberal excerpts from the opinions of those courts were set forth. One of the authorities there cited was the case of *Everett* v. *Mills,* 4 Scott (N. C.), 531, and is as follows: "It is the duty of all courts to confine themselves to the words of the legislature, nothing adding thereto, nothing diminishing." A part of the quotation from the opinion in another case cited (*Newell* v. *People,* 7 N. Y. 9) is as follows: "Whether we are considering an agreement between parties, a statute or a constitution, with a view to its interpretation, the thing we are to seek is, *the thought which it expresses.* To ascertain this, the first resort in all cases is the natural signification of the words employed, in the order and grammatical arrangement in which the framers of the instrument have placed them. If thus regarded the words embody a definite meaning, which involves no absurdity and no contradiction between different parts of the same writing, then that meaning apparent upon the face of the instrument is the one which alone we are at liberty to say was intended to be conveyed. In such a case there is no room for construction. That which the words declare, is the meaning of the instrument; and neither courts nor legislatures have the right to add to or take away from that meaning."

In the case of *Jay* v. *School District No. 1,* 24 Mont. 219, 61 Pac. 250, 252, this court in the course of a discussion relative to a legislative provision used the following language: "The section in question is not very skillfully drawn. Nevertheless, we must elicit the purpose and intent of it from the terms and expressions employed, if this is possible; calling to our aid the ordinary rules of grammar. This is the elementary rule applicable to all statutes. Other rules may be invoked only when this fails."

In the case of *State* v. *Cudahy Packing Co.,* 33 Mont. 179, 82 Pac. 833, 837, 114 Am. St. Rep. 804, 8 Ann. Cas. 717, this

court said: "The intention of any legislation must be inferred in the first place from the plain meaning of the words used. If this intention can be so arrived at, the courts may not go further and apply other means of interpretation. It is only where there is a doubt as to the intention that other rules may be applied."

In *Osterholm* v. *Boston & Montana Con. C. & S. M. Co.*, 40 Mont. 508, 107 Pac. 499, 502, this court said: "It is not allowable to interpret what has no need of interpretation, or, when the words have a definite and precise meaning, to go elsewhere in search of conjecture in order to restrict or extend their meaning. Statutes should be read and understood according to the natural and most obvious import of the language, without resorting to subtle and forced construction for the purpose of either limiting or extending their operation."

In the case of *Scheffer* v. *Chicago etc. Ry. Co.*, 53 Mont. 302, 163 Pac. 565, 566, it was said: "In construing a statute we are required to give to the words employed their ordinary meaning, unless it is made apparent from their character or the context or subject that a different meaning was intended."

To the same effect are the following: Endlich on the Interpretation of Statutes, sec. 4, p. 6; 2 Lewis' Sutherland on Statutory Construction, 2d ed., sec. 348, p. 665. The author of the last-cited work used the following language: "The statute itself furnishes the best means of its own exposition; and if the intent of the Act can be clearly ascertained from a reading of its provision, and all its parts may be brought into harmony therewith, that intent will prevail without resorting to other aids for construction. The intention of the Act will prevail over the literal sense of its terms."

It is pertinent to observe that a court cannot always assume an accommodating attitude. No court can take upon itself the role of a Polonius and always see what someone else desires it to see. In his great tragedy Hamlet, Shakespeare portrays this interesting dialogue between the characters Hamlet and Polonius:

"Ham. Do you see yonder cloud that's almost in shape of a camel?

"Pol. By the mass, and 'tis like a camel, indeed.

"Ham. Methinks it is like a weasel.

"Pol. It is backed like a weasel.

"Ham. Or like a whale?

"Pol. Very like a whale."   (Hamlet, Act III, Sc. ii.)

The first enactment of the main provisions of the section ██ under consideration occurred in 1927, and is found in the Session Laws of the Twentieth Session, Chapter 102. There the title of the Act reads as follows: "An Act Relating to the Office of County Surveyor of All Counties Having a Total Registered Vote of Twenty Three Thousand or Over at the Last General Election, Defining the Powers and Duties of County Surveyor, Abolishing the Office of Road Supervisor." The section was re-enacted by the Twenty-first Legislative Assembly in 1929 as Chapter 21.   There, in effect, the same title and text were used, except that the total registered vote necessary was reduced to 15,000.   The section was again amended by the Twenty-second Legislative Assembly of 1931 by Chapter 179 of the Laws thereof.   As heretofore stated, the section as it now appears in our Codes carries the following title: "County surveyor's duties in counties having total registered vote of fifteen thousand or over at last general election—salary."   The titles used in the various enactments and in the statute are merely set forth to throw some light on the intent and purpose of the legislature.   It is to be observed that in all of the enactments the enacting part of the section closely follows and only elaborates the subject as expressed in the title.

Article IX of our Constitution by specific terms defines an "elector" or those entitled to vote at general elections.   By section 9 of the Article it is provided that the legislative assembly shall have the power to pass a registration law and such other laws as may be necessary to secure the purity of elections and guard against abuses of the elective franchise. The statutes of the state (sec. 540 et seq., Rev. Codes) define

a qualified voter in accordance with the constitutional provision. Sections 553 et seq., Id., provide for the registration of voters and make registration a condition precedent to the right to vote. Section 562 provides that immediately after every general election the county clerk of each county shall strike from the official register the names of all those electors who failed to vote at such election.

It must be obvious then that on the third day of November, 1936, during all of the election day, there remained upon the registration books and lists of Yellowstone county the names of more than 15,000 voters or electors entitled to vote at such election, and that such names remained upon the lists until they were thereafter stricken in accordance with law.

The question then arises as to the meaning of the provision of the statute. The phrase under consideration reads as follows: "The county surveyor of all counties having a total registered vote of fifteen thousand (15,000) or over, at the last general election shall have exclusive control," etc. It is the contention of the respondents, as we have observed, that it was necessary for 15,000 voters actually to vote at the election before the section could be effective. It is the contention of the surveyor that it was only necessary to have the names of 15,000 registered voters on the lists in order to bring the provisions of the section into play.

It seems to us that the meaning of the provision is so plain and unambiguous that it requires no construction. To adopt the construction sought by the respondents would require that something be read into the statute. Their contention is that 15,000 shall have actually voted at the election. The statute does not say that. It says that the section shall go into effect whenever the total registered vote of the county is 15,000. If it had been intended that actual voting should be a prerequisite, the legislature could have said so. In the case of *Vennekolt* v. *Lutey,* 96 Mont. 72, 28 Pac. (2d) 452, 454, it was said: "If we could read that into the statute, we would then be in

a position intelligently to consider the question of uniformity of taxation.''

In *Mills* v. *State Board of Equalization,* 97 Mont. 13,- 33 Pac. (2d) 563, 569, it was said: ''To arrive at the construction adopted by the state board of equalization, it is necessary to read into each of these brackets following the first the following words: 'In addition to the tax levied in the preceding brackets,' or words of similar import.''

We find ourselves in the position here that in order to give effect to the contention of respondents something must be read into the statute, and this we may not do.

It is contended that the word ''vote,'' as used in the title and in the text of the section, does not mean votes or voters. We are not impressed by this contention. No case has been cited wherein a very enlightening discussion of this matter has occurred. In the case of *State ex rel. Blankenship* v. *Gaines, etc.,* 136 Wash. 610, 241 Pac. 12, however, some phases of the matter were given consideration. In the case of *Montana Beer etc. Assn.* v. *State Board of Equalization,* supra, attention was directed to the fact that ''in construing a statute, ordinarily, the words employed must be given their usual meaning, unless it is made apparent from the context of the subject that a different one was intended.''

In the light of the recognized rules for the construction of statutes herein cited, it seems inescapable to us that in all the various enactments of this section the legislature had in mind that the words ''registered vote'' were intended to mean, and do mean, voters who were registered and entitled to vote at the last general election, as distinguishable from voters who actually voted thereat. In the circumstances of this case, technical definitions and constructions of the words ''registered vote'' can have but little effect. We are finally confronted with the statutory mandate that we must give to the provision an interpretation in conformity with the intention of the legislature.

We have read with interest the numerous authorities cited by the parties. In none of them, however, did the court have under consideration facts or provisions exactly similar to those here involved. It is our opinion and the judgment of this court that relator, the county surveyor of Yellowstone county, is entitled to exercise the functions and enjoy the emoluments prescribed in section 1622.1, Revised Codes, and that the writ of mandate should issue in accordance with the prayer of the petition.

In the petition of the relator it is set forth that by reason of the action of the respondents he was forced to employ attorneys in this matter; that he did employ the firm of Crippen & Crippen, of Billings, Montana, to prosecute the proceedings for him; and that he is entitled to the allowance of a reasonable attorneys' fee herein. We are of the opinion that relator is entitled to a reasonable fee for his attorneys, and that the sum of $200 is a reasonable fee to be allowed for such services, and the same is hereby allowed, the fee to be chargeable against the county. Let judgment be entered accordingly. Writ ordered issued.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES ANDERSON, MORRIS and ANGSTMAN concur.