STATE ex Rel. PALAGI, Relator, v. REGAN, COUNTY
CLERK, Respondent.

(No. 8,314.)

(Submitted May 9, 1942. Decided June 5, 1942.)

[126 Pac. (2d) 818.]

344

346

 

*Mr. Charles Davidson* and *Mr. William F. Browning,* for Relator, submitted an original, a reply brief and a brief in Constitutional Questions; *Mr. Davidson* argued the cause orally.

*Mr. John D. Stafford* and *Mr. Cleveland Hall,* for Respondent, submitted an original, a supplemental and a brief on Constitutional Questions; *Mr. Hall* arguing the cause orally.

MR. CHIEF JUSTICE JOHNSON delivered the opinion of the court.

Relator seeks a writ of mandate to compel the respondent, as county clerk of Cascade county, to accept and file his petition and filing fee as a candidate for nomination for the office of sheriff of that county at the primary election to be held in July, 1942. There are no disputed facts and this court has accepted original jurisdiction as necessary and proper to the complete exercise of its appellate jurisdiction, time not permitting trial in district court and disposition here on appeal. (See Art. VIII, sec. 3, Const., and Rule IV, sec. 1, Rules of Supreme Court.) Respondent refuses to accept the nominating petition on the sole ground that relator was elected sheriff of Cascade county in November, 1938, for a term of four years ending January 4, 1943, was removed from office for violation of the Corrupt Practices Act, (*Kommers* v. *Palagi,* 111 Mont. 293, 108 Pac. (2d) 208), and is therefore ineligible for election in 1942 under section 10807, Revised Codes, which provides: "A candidate nominated or elected to an office, and whose nomination or election thereto has been annulled and set aside, for any offense mentioned in this Act, shall not, during the period fixed by law as the term of such office, be elected or appointed to fill any office or vacancy in any office or position of trust, honor, or emolument under the laws of the state of Montana, or

of any municipality therein. Any appointment or election to any office or position of trust, honor, or emolument, made in violation of or contrary to the provisions of this Act shall be void.''

Those words do not on their face seem to require construction since they are not ambiguous and can logically have only the meaning they clearly express, namely that relator *"shall not, during the period * * * be elected * * *."* However, relator contends that the Act does not during the period make him ineligible to be *"elected * * * to fill any office,"* but that during the period it makes him ineligible "to fill any office." "During" is a preposition; and a preposition is "a word generally with some meaning of position, direction, time or other abstract relation, and *connecting a noun* or a pronoun, in an adjectival or adverbial sense, *with some other word; * * *."* (Webster's New International Dictionary, Merriam-Webster, 2d Ed.) It is apparent, therefore, that the phrase "during the period" cannot modify the entire predicate, for it must modify a certain word or words rather than the entire predicate. It is apparent also that the words modified must be verbs, since the phrase expresses duration of time, during which something shall not be done, and cannot therefore logically relate to a noun. Thus, if the initiative measure had provided that relator should not hold an office during the term, the clause must logically modify the verb "hold" and not the noun "office," for the thing forbidden during the term would be the *holding* of the office.

Certainly the sentence means that something shall not be done during the period, and any layman reading it will immediately understand that what is forbidden to relator during the period of the term is the right to be "elected or appointed" and not merely the right "to fill any office." If the intent had been to provide merely that he could not fill any office during the period, the people could readily have said so by omitting the words "be elected or appointed to", but they did not do so.

"During the period" is obviously an adverbial phrase which modifies the nearest co-ordinate verbs,—"elected" and "ap-

pointed." (See *State ex rel. Peck* v. *Anderson,* 92 Mont. 298, 13 Pac. (2d) 231.) It might be argued that, strictly speaking, "elected" and "appointed" are not *antecedent* verbs, since they come after and not before the phrase "during the period." Actually, however, the words "shall * * * be elected or appointed" constitute a verb phrase (qualified by "not"), so that the modifying phrase "during the period" is in the middle of the verb phrase and shows the intention even more clearly than if it were placed after the verbs "elected" and "appointed." But if "during the period" were placed after those verbs and thus even closer to "fill" so as to read "shall not be elected or appointed during the period * * * to fill any office" there can be no doubt that the rule of nearest antecedent would apply, and that the phrase must modify the co-ordinate antecedent verbs "elected" and "appointed" rather than the following verb "fill." The fact that in the enactment the phrase was placed still farther away from "fill" and in the midst of the verb phrase to which "elected" and "appointed" belong, certainly cannot be construed as an attempt to make it modify "fill"; if that had been the purpose it would, according to grammatical rules, have been placed after "fill," rather than still farther ahead of it. We must therefore conclude that the legislative purpose in putting the phrase ahead of all the verbs and in the midst of the verb phrase of which the first verbs are a part, was to remove any contention that it could modify the last, for it must in any event relate to the nearest verb that will make sense. Since "shall not, during the period * * * be elected or appointed" does make sense and is in accord with the purpose of the Act, there can be no excuse for ignoring that fact and construing the phrase to modify the more distant verb "fill."

Relator apparently concedes that if the provision were that relator "shall not, during the period * * * be elected or appointed *to any office*" he would clearly be barred as a candidate, but he argues that by the insertion of the word "fill" before the words "any office" the meaning of the entire provision

is changed so that what is forbidden during the period is not the election by the people or appointment by the appointing power, but the filling of office by relator after such election or appointment.

The only way the presence of the word "fill" could have that effect would be by causing the phrase "during the period" somehow to hurdle the nearest verbs and annex itself to the new verb "fill" so as to modify it. But that effect, in addition to violating the grammatical rule just mentioned, would also reverse the relations of the words. Omitting for the moment the entire phrase "to fill any office," the provision reads that relator "shall not, during the period * * * be elected or appointed." "Elected or appointed" to or for what? "To fill any office." Obviously, the latter phrase modifies or explains the words "elected" and "appointed," just as the phrase "to any office" would do if the word "fill" had been omitted; for "elected" and "appointed" constitute the nearest antecedent verbs. The addition of the word "fill" clearly makes no logical difference in that respect.

Furthermore, under that contention, instead of reading the section as it now is, namely that relator *"shall not, during the period * * * be elected or appointed* to fill any office" we must then read it to say that he *"shall not* be elected or appointed *to fill any office during the period."* But that would require a change in order which the people in enacting the initiative law did not see fit to make, and it is not clear how we can have the authority to make it for them under the circumstances, although we might transpose the phrase if necessary to give effect to their manifest intent (59 C. J. 1004, sec. 597) especially if it were without meaning where it stands (25 R. C. L. 965, section 219).

The legislative power in enacting the law is presumed to have understood the ordinary and elementary rules of construction of the English language, and we must therefore construe it "according to the context and the approved usage of the language." (Sec. 15, Rev. Codes.)

In construing a statute, its words and phrases must be given ▆ ▆ the plain and ordinary meaning (*State* v. *Bowker,* 63 Mont. 1, 205 Pac. 961), unless the context makes it apparent that a different meaning was intended (*Montana Beer Retailers' Protective Ass'n* v. *State Board of Equalization,* 95 Mont. 30, 25 Pac. (2d) 127; *State ex rel. Durland* v. *Board of Com'rs of Yellowstone County,* 104 Mont. 21, 64 Pac. (2d) 1060); and a supposed unexpressed intent in enacting the statute cannot override the clear import of the language employed. (*Equitable Life Assur. Society* v. *Hart,* 55 Mont. 76, 173 Pac. 1062; *State ex rel. Peck* v. *Anderson,* supra; *Standard Oil Co.* v. *Idaho Community Oil Co.,* 95 Mont. 412, 27 Pac. (2d) 173.)

Courts must first resort to the ordinary rules of grammar (*Jay* v. *School District,* 24 Mont. 219, 61 Pac. 250; *State ex rel. Peck* v. *Anderson,* supra), in the absence of a clear contrary intention *disclosed by the text* must give effect to the legislative intent according to those rules (*Melzner* v. *Northern Pac. Ry. Co.,* 46 Mont. 162, 127 Pac. 146; *State* v. *Centennial Brewing Co.,* 55 Mont. 500, 179 Pac. 296; *State ex rel. Peck* v. *Anderson,* supra), and according to the natural and most obvious import of the language, without resorting to subtle and forced construction to limit or extend their operation (*Osterholm* v. *Boston & Montana C. C. & S. Mining Co.,* 40 Mont. 508, 107 Pac. 499; *Lewis* v. *Petroleum County,* 92 Mont. 563, 17 Pac. (2d) 60, 86 A. L. R. 575; *State ex rel. Durland* v. *Board of Com'rs of Yellowstone County,* supra) and must first resort to the natural significance of the words employed *in the order of grammatical arrangement in which they are placed,* and if, thus regarded, they embody a definite meaning involving no absurdity or contradiction, the courts may not add to nor take away from their meaning. (*State ex rel. Hinz* v. *Moody,* 71 Mont. 473, 230 Pac. 575.)

Here, to say the least, the context does not make it apparent that a different meaning is intended from that clearly conveyed by the words when construed according to the ordinary rules of grammar, and in the order of grammatical arrangement in

which they were placed in the initiative Act; and there is neither justification nor excuse for reading into the statute an ambiguity in order to make it mean otherwise than what any layman acquainted with the ordinary rules of grammar must naturally understand it to mean.

Relator contends that his construction of the section should be adopted because the title of that section as it appears in the 1935 Codes is "Disqualification of person convicted to hold office," rather than *"to be elected* to office." That title was not in the Act as adopted by the people in 1912, Laws 1913, p. 611, section 42, but was added by the Code Commissioner in 1921. Therefore it cannot help us in our determination of the people's legislative intent, in spite of the fact that it is now a part of the Codes. If instead of adding this title, which is not consonant with the meaning of the section construed in accordance with the accepted rules of construction, the Code Commissioner had rearranged the words of the section so as to give them that different meaning, we might assume that the adoption of the Codes and the failure of the legislature or the people to restore the original meaning would have changed the law.

But the text of the section does not disqualify relator from *holding* office, since it makes no attempt to create a vacancy in any other office which he may have acquired previously and held concurrently with that of sheriff.

Finally, while resort may be had to the title of a section to determine legislative intent in order to explain an ambiguity (*McLaughlin* v. *Bardsen,* 50 Mont. 177, 145 Pac. 954; In re *Trepp's Estate,* 71 Mont. 154, 227 Pac. 1005; *Campbell* v. *City of Helena,* 92 Mont. 366, 16 Pac. (2d) 1), certainly it may not be resorted to in order to make an ambiguity; and as shown above there is none when the words of the Act are construed according to the accepted rules of construction and according to the arrangement in which they appear. The effect of relator's contention would be, not only to cause an ambiguity where none existed in the text, but also to resolve that ambiguity by permitting the title to overrule the text. The latter could not

be permitted even if the title had been part of the Act when adopted by the people, for it is the accepted law as well as sound sense that the title must be subordinate to the text in construing a statute. (*State ex rel. Jones* v. *Erickson,* 75 Mont. 429, 244 Pac. 287.) Thus, since the text reads that the relator ''shall not during the term *be elected''* it could not be overruled by the title's reference to ''disqualification * * * *to hold office,''* even if the title had originally been part of the Act.

If there were any question as to the meaning of section 10807 or as to its being directed against ''election or appointment'' to office rather than against the holding of office, the question would seem to be concluded by its final provision: ''Any *appointment* or *election* to any office or position of trust, honor, or emolument, made in violation of or contrary to the provisions of this Act, shall be void.''

It would also seem effectually answered by the provision of section 10810 authorizing a contest of the election of any person who was not *''at the time of the election,* eligible to such office.''

It must, therefore, be held that section 10807 of the Codes forbids relator's election during the term ending on the first Monday in 1943, and that consequently his petition as a candidate for election in 1942 cannot be received if the provision is valid.

Relator contends that this interpretation renders the statute unconstitutional but that the interpretation urged by him would not, and that the latter should therefore be adopted. However, concluding as we do that the statute is not ambiguous, it is not possible to adopt an alternative construction for the purpose of avoiding unconstitutionality. Furthermore, it seems clear that either interpretation is open to the same objection, which would prevent our adoption of the urged alternative, even though it would have removed the statute's application to the present cause and would thus have obviated any necessity for considering the constitutional question, with which we are now confronted.

The judgment by which relator was removed from office

(*Kommers* v. *Palagi,* supra) was rendered in an election contest brought under the Corrupt Practices Act; it adjudged him guilty of violating that Act, and declared his election void and the office of sheriff vacant.

Sections 10803 to 10807, 10809 to 10814, 10817 and 10818, Revised Codes, all relate to such proceeding and all regard it as one to determine the right to an office. Section 10810 authorizes it as a suit to "contest the right of any person to any nomination or office." Section 10803 speaks of it as an "action or proceeding * * * for the contest of the right of any person declared nominated or elected to any office, or to annul or set aside such nomination or election, or to remove a person from his office." Sections 10804, 10805, 10806 and 10807 use about the same words. Thus the purpose of such proceeding is to contest the person's right to his office on account of his violation of the Act, to annul his election and remove him from office, and that was the judgment in relator's case. While section 10804 speaks of the "guilty" person and of his being "punished" by being deprived of the nomination or election, it seems clear from all the provisions that it is not guilt or punishment in the criminal sense which is authorized to be adjudged in this type of proceeding, but solely the question whether because of violations of the law, ineligibility to the office, illegal votes or an erroneous or fraudulent count, his election is void and his office vacant. It is upon that ground that Acts of this kind for the removal of officers for violation of election laws are uniformly held not to be criminal in nature, but special statutory proceedings (*Curry* v. *McCaffery,* 47 Mont. 191, 131 Pac. 673), unknown to the common law, and as such exempt from constitutional requirements as to criminal prosecution and trial by jury.

Similarly it was held in *Tipton* v. *Sands,* 103 Mont. 1, 60 Pac. (2d) 662, 666, 106 A. L. R. 474, that the Act does not contravene the provisions of Article V, section 17, of the Constitution of Montana, relative to impeachment and removal of officers for offenses in office, because the election contest authorized

by the Act "is to determine the validity of contestee's election; if he is guilty of a corrupt practice his election is void and he holds no office and never did" hold the office in question.

Relator's loss of the office is no more a punishment than one's loss of property or of a contract right by a judgment finding one's title or right void; in spite of the loose language used, relator's removal from office was not punishment for his violation of the Act, but the natural consequence of the fact that the violations invalidated his election and made the office vacant. The suit could do no more than determine his right to the office, and the judgment in respondent's case attempted to do no more.

That the purpose is to try the officer's title to his office and not punish him, is further evidenced by the final provision of section 10804 that: "Such judgment [in the election contest] shall not prevent the candidate or officer from being proceeded against by indictment or criminal information for any such act or acts," and by the provisions of section 10816 fixing criminal penalties and section 10808 making criminal prosecution the mandatory duty of county attorneys in proper cases.

The question, therefore, is not with reference to the election contest as such, nor to the adjudication annulling or setting aside an election, but to the additional provision, in section 10807, which would not otherwise follow from the judgment, that one whose election has been "annulled and set aside" for any offense mentioned in the Act shall be disqualified from election or appointment to any office during the term.

It may be that a mere provision against contestee's holding any part of his annulled term as sheriff, either by subsequent election or appointment, would not constitute a disqualification but merely a provision to give full effect to the judgment, since if it were not for the judgment there would be no vacancy to be filled by appointment or election. But that question is not presented here, and we express no opinion concerning it. However, so far as it forbids his election or appointment to another office for part of the same term or to the same or any other office for a subsequent term, it obviously constitutes, not the

enforcement of the judgment of removal, nor a necessary provision to make the judgment and the Act effective, but a temporary disqualification for any office.

Thus we come to the question whether the statutory disqualification violates the constitutional provision relative to eligibility for office. Article IX, section 2, provides that "every person" having certain stated qualifications shall be entitled to vote at all general elections and for all (elective) officers and adds the disqualification "that no person convicted of a felony shall have the right to vote unless he has been pardoned or restored to citizenship by the governor." Article IX, section 11, provides with reference to constitutional officers, which includes that of sheriff (Article XVI, sec. 5) that "*Any* person qualified to vote at general elections and for state officers in this state, shall be eligible to any office therein except as otherwise provided in this Constitution, * * *."

Section 10807 disqualifies for election or appointment to any office during a certain period any and all persons having the constitutional qualifications but whose nomination or election has been annulled and set aside for any offense mentioned in the Corrupt Practices Act. There can be no question that it provides a disqualification or ineligibility in addition to those provided by the Constitution. The fact that the disability is temporary and not permanent makes it no less a disqualification or ineligibility while it continues, and thus no less in conflict with the Constitution.

There is no question of the right of the legislative authority to enact a Corrupt Practices Act pursuant to Article IX, section 9, and to provide "for the contesting of the right of any person * * * to an office, or to annul and set aside such election, or to remove any person from his office" for "any corrupt practice, illegal act, or undue influence, in or about such * * * election." Relator's loss of the office to which he was improperly elected is *res judicata* (*Kommers* v. *Palagi,* supra), and is not here involved. But the question is whether, in addition, a disqualification not included in the Constitution

can be added, even for the laudable and constitutional purpose of purifying elections.

It is well settled that statutes imposing additional qualifica-
**[9-12]** tions or disqualifications for these political rights are void (*State ex rel. Chenoweth* v. *Acton,* 31 Mont. 37, 77 Pac. 299), since they conflict with the above constitutional provisions that ''every person'' or ''any person'' having the constitutional qualifications shall have the rights. The provisions in question thus necessarily include a prohibition upon the legislative power.

It is apparent that prohibitions need not be expressly made in the Constitution, for a declaration of a fundamental right may be the equivalent of a prohibition against legislation impairing the right. (*Lawrence E. Tierney Coal Co.* v. *Smith's Guardian,* 180 Ky. 815, 203 S. W. 731, 4 A. L. R. 1540.) Since additional statutory qualifications or disqualifications for office must necessarily conflict with the provisions of Article IX, sections 2 and 11, that ''every person'' or ''any person'' having the qualifications therein stated are eligible for office, this court has correctly held additional legislative requirements void. (*State ex rel. Chenoweth* v. *Acton,* supra.)

The provisions of the state Constitution are ''mandatory and prohibitory, unless by express words they are declared to be otherwise'', (Article III, sec. 29), and they are conclusive upon the legislative authority and prevent the enactment of any law which extinguishes or limits powers conferred by the Constitution. (*State ex rel. Du Fresne* v. *Leslie,* 100 Mont. 449, 50 Pac. (2d) 959, 101 A. L. R. 1329.) Furthermore, constitutional prohibitions against legislative actions are self-executing. (*State* v. *Board of Commissioners of Chouteau County,* 42 Mont. 62, 111 Pac. 144.) It necessarily follows that a statute otherwise valid under other constitutional provisions must be held void in so far as it conflicts with a prohibition; for the Constitution must be construed as a whole (11 Am. Jur. 661, sec. 53, 665, sec. 55; sec. 16 C. J. S., Constitutional Law, p. 62, sec. 23) and effect given to every part of it (*Montana Coal & Coke Co.* v. *Living-*

*ston,* 21 Mont. 59, 52 Pac. 780; *Martien* v. *Porter,* 68 Mont. 450, 219 Pac. 817; *State ex rel. Corry* v. *Cooney,* 70 Mont. 355, 225 Pac. 1007) and no part of it allowed to be nullified, even by another part, unless it is utterly impossible to reconcile them, in which case a special provision must prevail over a general. (*British-American Oil Prod. Co. v. State Board of Equalization,* 101 Mont. 293, 54 Pac. (2d) 129.) The latter proviso does not apply here, since the legislature may obviously obey section 9 of Article IX without nullifying sections 2 and 11 thereof.

Since the provisions of the Constitution are conclusive upon the legislative power, the people under their reserved initiative power are no less subject to it than is the legislature (*State ex rel. Evans* v. *Stewart,* 53 Mont. 18, 161 Pac. 309; *State ex rel. Bonner* v. *Dixon,* 59 Mont. 58, 195 Pac. 841); thus, prior to the amendment of Article IX, section 10, the people had no more power, by initiative measure, to prescribe additional qualifications for county superintendents of schools than the legislature had. (See *State ex rel. Chenoweth* v. *Acton,* supra.) To hold otherwise would be to permit the amendment of the Constitution by the enactment of an initiative measure, thus violating Article XIX, section 9, the provisions of which are mandatory. (*State ex rel. Woods* v. *Tooker,* 15 Mont. 8, 37 Pac. 840, 25 L. R. A. 560.)

It is therefore apparent that in so far as section 10807 would make respondent ineligible for election to the constitutional office of sheriff while admittedly possessing all the constitutional qualifications therefor, it must be held void.

It is unnecessary to discuss the further constitutional question whether the disqualification for office imposed by section 10807, like the disqualification imposed by Article IX, section 2 of the Constitution of Montana, is such a punishment for or consequence of crime that it must be based upon a conviction of the crime by jury trial (Article III, secs. 16 and 23) in a prosecution by information or indictment (Article III, sec. 8), rather than upon a judgment after trial without a jury in an

election contest, merely annulling contestee's nomination or election for such offense.

It follows from what has been said that a peremptory writ must issue as prayed for. Accordingly it is so ordered.

ASSOCIATE JUSTICES MORRIS, ERICKSON and ANDERSON concur.

MR. JUSTICE ANGSTMAN:

I concur in the result reached in the foregoing opinion, but for a different reason. I do not interpret section 10807 as do my associates. When originally enacted, section 10807, so far as material here, provided: "A candidate nominated or elected to an office, and whose nomination or election thereto has been annulled and set aside for any offense mentioned in this Act, shall not, during the period fixed by law as the term of such office be elected or appointed to fill any office or vacancy in any office or position of trust, honor or emolument under the laws of the State of Montana or of any municipality therein."

In the process of codification section 10807 has had six commas added to it. It is my view that the clause "during the period fixed by law as the term of such office," since it is not followed by a comma, necessarily modifies the entire clause "be elected or appointed to fill any office or vacancy in any office or position of trust, honor or emolument under the laws of the State of Montana or of any municipality therein." In other words, during the prohibited period the things that may not be done are twofold, and there must be a union of both before the Act applies. The election or appointment is one thing, and filling, assuming or holding the office the other. In my opinion, an election or appointment may be made during the prohibited period so long as the filling of the office does not take place until after the term for which the person was removed, as here. Likewise, the filling of a position of trust may take place during the prohibited period so long as the appointment or election did not take place within the term for which the person was removed. Thus a person holding the position of notary public by an appointment made before the prohibited period would not

lose his right to hold that position during the prohibited period.

I think that it was not contemplated by section 10807 that a person could not be elected or appointed during the period covered by the term of office for which he was removed, but only to prevent him from filling or assuming an office obtained by appointment or election during that period. I think this court properly interpreted section 10807 in the case of *State ex rel. Kommers* v. *District Court,* 109 Mont. 287, 96 Pac. (2d) 271, 273, by saying: "It having been adjudicated that Palagi violated the Corrupt Practices Act in the election of 1938, he is disqualified under section 10807 from holding office by election or appointment for the period fixed by law as the term of such office." To hold otherwise would be to sustain a greater penalty when an officer is removed by an election contest, without the right of trial by jury, than if he were proceeded against by a criminal information for the same act or acts, as he might be under section 10804, and found guilty. (Sec. 10816, Rev. Codes.)

In consequence, I think the writ applied for should be granted. I express no opinion upon the other points discussed in the opinion prepared by the Chief Justice.