27 P.3d 1254 (2001)
FRATERNAL ORDER OF EAGLES, TENINO AERIE NO. 564; Kathleen L. Connor; Lanette Davis; Julia A. Foster; Gayle L. Hartman; Kaycee L. Johnson; Annette M. Riley; Diane E. Roberts; Janet Tresenriter; Alice F. Vassar; and Whidbey Island Aerie No. 3418, Respondents,
v.
GRAND AERIE, FRATERNAL ORDER OF EAGLES and Washington State Aerie, Fraternal Order of Eagles; Washington State Aerie, Appellants.
No. 25864-1-II.
Court of Appeals of Washington, Division 2.
August 3, 2001.
*1255 John Warner Widell, Hall Zanzig Widell PLLC, Seattle, Howard Terry Hall, Wolfstone Panchot & Bloch PS, Seattle, for Appellant.
Rosemary Daszkiewicz, Marlyn Kathryn Hawkins, Cairncross & Hempelmann PS, Seattle, for Respondents.
Bruce Edward Humble Johnson, Jeffrey L. Fisher, Davis Wright Tremaine, Seattle, for Amicus Curiae Conpor.
BRIDGEWATER, J.
The Grand Aerie of the Fraternal Order of Eagles (FOE), together with the Washington State FOE, appeals the trial court's grant of summary judgment in favor of FOE's chapter in Tenino, Washington. The trial court ruled that FOE's refusal to admit new female members violated Washington's law against discrimination, chapter 49.60 RCW. We hold that a plain reading of this statute exempts fraternal organizations from its application except when such organizations permit public use. We reverse, including the award of attorney fees, and remand for entry of summary judgment in favor of the Grand Aerie.

History, Purpose, and Organizational Structure
Established in 1898, FOE now has 1.6 million members. There are approximately 66,000 members in Washington belonging to 106 chapters, or "Local Aeries." FOE is a nonprofit organization.[1] All Aeries are privately funded.
FOE's purpose is to "unite fraternally for mutual benefit, protection, improvement, social enjoyment and association, all persons of good moral character who believe in a Supreme Being to inculcate the principles of liberty, truth, justice and equality[.]" CP at 644. FOE engages in activities designed to promote fraternity, charity, community, friendship and civic responsibility.
The Grand Aerie is FOE's governing body and establishes organizational policy. Every Local Aerie must adopt FOE's constitution.
The Grand Aerie strictly maintains that FOE is not a civic or business group. According to the Grand Aerie, FOE does not promote its members' business or economic interests, no outside business may be conducted at Aerie meetings, and it does not offer training or opportunities for its members to develop business skills or contacts.

Membership Requirements
Although FOE constantly seeks to increase its membership, the Grand Aerie restricts who may become an Aerie member:
No person shall be eligible to be elected to membership ... unless such person is a male, is of good moral character, and believes in the existence of a Supreme Being, is not a member of any other Local Aerie of the [FOE], and unless he is over twenty-one (21) years of age[.]
CP at 669. In addition, prospective members must not belong to the Communist party or advocate the violent overthrow of the government.
To join a Local Aerie, an individual must be sponsored by two current members in good standing of that Aerie. The Grand Aerie claims that members may not sponsor *1256 an individual unless they believe he would be a good friend and fraternal brother.
After being nominated, applicants must be interviewed and recommended by the interviewing committee of the Local Aerie they seek to join. If an applicant is recommended, the members then vote to admit or reject him.

Policy on Female Aerie Members
FOE has a long history of excluding women from membership in Aeries. Instead, each Local Aerie has a corresponding Auxiliary that admits only women. But in 1995, the Grand Tribunal, FOE's judicial body, issued Opinion 750 that reversed the males-only Aerie membership policy. Soon after Opinion 750 was issued, several Local Aeries, including the Tenino, Washington Aerie (Tenino Aerie), began to admit female members.
The Grand Aerie withdrew Opinion 750 during its 1998 convention, thereby reinstating the males-only Aerie membership policy. The Grand Aerie, however, did not revoke the membership of women who became Local Aerie members before Opinion 750 was withdrawn. These women continue to be treated as full Aerie members by the Grand Aerie. The Tenino Aerie currently has 721 members, including 56 women.
According to FOE's constitution, any Aerie member may attend the meeting of another Aerie in a non-voting capacity. Female Aerie members (as opposed to Auxiliary members) must be welcomed at every other Local Aerie's meetings, regardless of whether that particular Aerie has chosen to admit women.

Rituals
Local Aeries hold twice-monthly meetings at which FOE's rituals are performed. Only Aerie members may attend such meetings. Only Aerie members know these rituals.
Aeries practice their rituals extensively. Ritual competitions are an important part of state, regional, and national FOE gatherings. The Grand Aerie claims that the rituals "are the essence of membership in the [FOE]"[2] and would be rendered meaningless if not performed among men who value the "unique bond among a group of male friends who share a belief in a Supreme Being." Br. of Appellant at 10. Female members of the Tenino Aerie attend its meetings and also participate in its rituals.

Nonmembers and FOE
Although Aerie facilities are not open to the public, there are several ways that non-members of either sex can use the facilities. Every Local Aerie has a provision allowing Aerie and Auxiliary members to bring guests into its club or social room. Local Aeries sometimes rent unused rooms for weddings and similar events. In Washington, some Local Aeries serve lunch to anyone willing to pay; some also hold public dances.
FOE includes non-members, of both sexes, in many of its activities. Both male and female non-members attend its national convention. FOE works closely with male and female non-members through its various humanitarian, civic, and patriotic programs. Local Aeries carry out weekly or monthly suppers, evening entertainment, holiday activities, and civic events. Some of these events are for the members and their families and guests, other events are open to the public. FOE works with area youth, sponsors floats in parades, and honors non-member fire fighters and police officers.

I. Washington's Law Against Discrimination
Washington's law against discrimination ("WLAD" or "the statute") recognizes the "right to be free from discrimination because of race, creed, color, national origin, [and] sex"[3] as a "civil right." RCW 49.60.030(1). Its purpose is to "deter and eradicate discrimination in Washington." Marquis v. City of Spokane, 130 Wash.2d 97, 109, 922 P.2d 43 (1996). Its provisions are to be liberally construed[4] to accomplish this *1257 purpose and its exceptions "narrowly confined." Phillips v. City of Seattle, 111 Wash.2d 903, 908, 766 P.2d 1099 (1989).
WLAD specifically prohibits discrimination in "public accommodation,"[5] broadly defined as:
[A]ny place, licensed or unlicensed ... where charges are made for admission, service, occupancy, or use of any property or facilities, ... or for the sale of goods, merchandise, services, or personal property, or for the rendering of personal services... or where food or beverages of any kind are sold for consumption on the premises, or where public amusement, entertainment, sports, or recreation of any kind is offered with or without charge ... or where the public gathers, congregates, or assembles for amusement, recreation, or public purposes[.]
RCW 49.60.040(10). The Legislature included a proviso in WLAD's public accommodation arm, which states:
[N]othing contained in this definition shall be construed to include or apply to any institute, bona fide club, or place of accommodation, which is by its nature distinctly private, including fraternal organizations, though where public use is permitted that use shall be covered by this chapter; nor shall anything contained in this definition apply to any educational facility, columbarium, crematory, mausoleum, or cemetery operated or maintained by a bona fide religious or sectarian institution[.]
RCW 49.60.040(10).

II. Statutory Interpretation
We review de novo the meaning of a statute, with the primary purpose of giving effect to legislative intent. State v. Kuhn, 74 Wash.App. 787, 790, 875 P.2d 1225 (1994), review denied, 127 Wash.2d 1017, 904 P.2d 299 (1995).
The trial court interpreted WLAD's language to exempt only groups that are distinctly private in nature, then it determined that FOE was not distinctly private. The trial court construed WLAD's public accommodation provisions to require FOE to admit women.
The Grand Aerie argues that WLAD's plain, unambiguous language expressly exempts fraternal organizations (i.e., FOE is exempt because it is a fraternal organization). The Tenino Aerie does not dispute that FOE is a "fraternal organization." But it maintains that there is a requirement that FOE's nature be distinctly private before an exemption is granted, just as there must be for an "institute," a "bona fide club," or a "place of accommodation."
The goal when construing a statute is to carry out the legislature's intent. Seven Gables Corp. v. MGM/UA Entertainment Co., 106 Wash.2d 1, 6, 721 P.2d 1 (1986). A statute is not ambiguous simply because arguments regarding distinct interpretations of it are conceivable. See In re Riley, 122 Wash.2d 772, 782, 863 P.2d 554 (1993); Armstrong v. Safeco Ins. Co., 111 Wash.2d 784, 790-91, 765 P.2d 276 (1988). When determining the intent underlying a statute, a court must interpret the language at issue in the context of the entire statute. In re Sehome Park Care Ctr., Inc., 127 Wash.2d 774, 778, 903 P.2d 443 (1995). Strained or unrealistic interpretations should be avoided. Bour v. Johnson, 122 Wash.2d 829, 835, 864 P.2d 380 (1993). Statutes should be interpreted "so as not to render any language superfluous." Fray v. Spokane County, 134 Wash.2d 637, 648, 952 P.2d 601 (1998).
The Tenino Aerie suggests that we look to the punctuation of the proviso and to rules of grammatical construction. We agree that this is the correct methodology.[6] The *1258 proviso provides: "[N]othing contained in this definition shall be construed to include or apply to any institute, bona fide club, or place of accommodation, which is by its nature distinctly private, including fraternal organizations[.]" RCW 49.60.040(10). We also agree that there are two broad categories of groups that are given exemptions: those with a religious basis (i.e., educational facilities, columbariums, crematories, mausoleums, and cemeteries) and those that do not have a religious basis (i.e., institutes, clubs, places of accommodation, and fraternal organizations). See RCW 49.60.040(10).
The Tenino Aerie paints with a broad brush and calls the non-religious category "the private entity exception," thus, automatically assuming that all entities listed in that category must prove that they are "distinctly private." We examine this phrase to determine if the legislative intent can be so ascertained.
First, we note that "fraternal organizations" is set apart from "institute," "club," and "place of accommodation" within the statute. It is plain that this list of three nouns (i.e., "institute, club, or place") is intended to be read together because they are connected by the word "or," which is a function word indicating that they are alternatives to each other. See WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1585 (1969) (stating that "or" is used as a function word to indicate alternatives between different things). Thus, the three nouns are connected by some common idea.
Second, "fraternal organizations" is set apart from the three nouns by the adjective clause (also known as a "relative clause"): "which is by its nature distinctly private." Adjective clauses are to immediately follow the noun or nouns that they modify. See Caughey v. Employment Sec. Dep't, 81 Wash.2d 597, 602, 503 P.2d 460 (1972) ("[W]here no contrary intention appears in a statute, relative and qualifying words and phrases refer to the last antecedent."); Lakeside Country Day School v. King County, 179 Wash. 588, 591, 38 P.2d 264 (1934) ("`It is a rule of law as old as the law itself, that a relative clause shall be construed to relate to the nearest antecedent that will make sense.'" (quoting State ex rel. Peck v. Anderson, 92 Mont. 298, 13 P.2d 231, 233 (1932))); Casco Co. v. Olympia, 124 Wash. 218, 222, 213 P. 915 (1923) ("The general rule that a proviso is deemed to apply only to the immediately preceding clauses or provisions in the section in which it is found is subject to many exceptions. It is always a question of legislative intent[.]").
The reason for this rule is so that it will be clear what is being modified. Clearly, the series of nouns ("institute, club, or place") are modified by this adjective clause and "fraternal organizations" is not. By this sentence construction we can clearly understand what the common idea is that connects those three entities together-a nature that may be "distinctly private." That is to say, these entities either fit within the definition of being "distinctly private" or they are "public." Plainly, "fraternal organizations" is not modified by this adjective clause. It would have been a simple task for the legislature to include "fraternal organizations" in its list and it did not.
The Tenino Aerie asserts that the word "including" brings "fraternal organizations" within the list of the three nouns. But, read in the context of the statute, "including" is a synonym for the word "and."[7] "Including" brings "fraternal organizations" within the list separated by the adjective clause. By use of this language, the legislature already determined that fraternal organizations are, by their very nature, "distinctly private."
We conclude that fraternal organizations are automatically excluded from the statute's *1259 operation. Our conclusion is further buttressed by examining the broad list of what is included in "public accommodations." We have extensively set forth FOE's purpose, membership requirements, and operation, and none of those aims, operations, or goals come within the ambit of the legislature's definition of "public accommodations" in the statute. But for those limited occasions when the organization acts like a public accommodation (e.g., serving lunches, holding public dances, or renting facilities for events), the legislature has provided that it shall be "covered by this chapter." RCW 49.60.040(10) ("though where public use is permitted that use shall be covered by this chapter"). Therefore, there is no need for FOE to prove it is "distinctly private"; fraternal organizations do not come within the ambit of "public accommodations." The statute is unambiguous; this proviso exempts fraternal organizations from the statute's application without having to examine whether they are "distinctly private."
The trial court erred. Because we have decided this case based upon the statute, we do not address the parties' constitutional arguments.[8] Further, because FOE is exempt under WLAD the Respondents have not prevailed and are not entitled to attorney fees either for trial or for this appeal. RCW 49.60.030(2) (WLAD awards attorney fees to prevailing plaintiffs).
Reversed and remanded for entry of summary judgment in favor of Grand Aerie of the Fraternal Order of Eagles and the Fraternal Order of Eagles.
We concur: SEINFELD, P.J., and QUINN-BRINTNALL, J.
NOTES
[1] The Internal Revenue Service recognizes FOE "as exempt from Federal Income Tax under section 501(c)(10) of the Internal Revenue Code[.]" Clerk's Papers (CP) at 612.
[2] CP at 598-99.
[3] "Sex" is defined as "gender." RCW 49.60.040(14).
[4] RCW 49.60.020
[5] RCW 49.60.030(1)(b); RCW 49.60.215.
[6] See Lake County v. Rollins, 130 U.S. 662, 670, 9 S.Ct. 651, 32 L.Ed. 1060 (1889) ("To get at the thought or meaning expressed in a statute ... the first resort, in all cases, is to the natural signification of the words, in the order of grammatical arrangement in which the framers of the instrument have placed them."); Estate of Telfer v. County Comm'rs, 71 Wash.App. 833, 836, 862 P.2d 637 (1993) (applying principles of statutory construction and "normal rules of grammar" to interpret a statute), review denied, 123 Wash.2d 1028, 877 P.2d 695 (1994); SUTHERLAND STAT. CONSTR. § 47:15 at 264 (6th ed.2000) ("an act should be read as punctuated unless there is some other reason to do otherwise"); see also U.S. v. Goldenberg, 168 U.S. 95, 103, 18 S.Ct. 3, 42 L.Ed. 394 (1897) (lawmakers are "presumed to know the ... rules of grammar"); State ex rel. McDonald v. Whatcom County, 92 Wash.2d 35, 39-40, 593 P.2d 546 (1979) (C.J., Utter dissenting) (finding a statute unambiguous by reading it to understand its intent and following standard rules of grammar).
[7] Cf. Brown v. Scott Paper Worldwide Co., 143 Wash.2d 349, 359, 20 P.3d 921 (2001) (the word "includes" is a "term of enlargement"); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1143 (1969) (defining "include" to mean "to take in, enfold, or comprise as a discrete or subordinate part or item of a larger aggregate, group, or principle").
[8] The Tenino Aerie brought this action solely under the WLAD.