## J. S. SAARI v. JOHN J. GLEASON.[1]

July 10, 1914.

Nos. 18,741—(124).

**Corrupt Practices Act.**

1. Chapter 3, Laws 1912 (G. S. 1913, §§ 567–609), known as the "Corrupt Practices Act," provides two remedies for violation of its terms, one by criminal prosecution and conviction and a supplemental judgment of ouster, and the other by a contest of the election carried on according to the law regulating election contests in general.

**Same — authority of legislature to enact statute.**

2. The legislature has the power under the Constitution of the state to pass an act prohibiting corrupt practices in elections, and prohibiting any candidate from employing corrupt means to obtain an office, and providing that the practice of corruption by a candidate in securing an office shall bar him from entering into the possession thereof.

**Same — act valid.**

3. Chapter 3, Laws 1912, prohibits practices corrupt and immoral and violative of the purity of elections, and provides that they shall be a ground for contest of the election. These provisions are valid. The act provides that in event any part thereof shall be held invalid, the remainder shall not

1 Reported in 148 N. W. 293.

be invalidated but shall remain in full force and effect. Under such a provision the rule is that, if part of a statute is unconstitutional, the remaining portions must nevertheless be sustained, if enough is left to constitute an enforceable law. The provisions of this act which are unquestionably valid constitute an enforceable law, and are not affected by the validity or invalidity of other provisions of the act.

From a decision of the common council of the city of Eveleth, acting as a canvassing board, declaring John J. Gleason to be elected mayor of that city, J. S. Saari appealed to the district court for St. Louis county. From the order of the district court, Dancer, J., overruling John J. Gleason's demurrer to certain allegations in the notice of appeal, he appealed. Affirmed.

*S. F. White* and *J. C. McGilvery,* for appellant.
*O. J. Larson* and *Neil E. Beaton,* for respondent.

HALLAM, J.

At an election in the city of Eveleth the contestee John J. Gleason was declared elected mayor. Contestant J. S. Saari was his opponent. He contests the election on the ground that contestee Gleason violated what is known as the "Corrupt Practices Act" of 1912 (Laws 1912, p. 23, c. 3; G. S. 1913, §§ 567–609). In the petition it is alleged:

That contestee published and circulated, otherwise than in a newspaper, literature which failed to bear on its face the name and address of its author or of the candidate in whose behalf it was published and circulated, or of the person causing it to be published and circulated, and that he knowingly made false statements in relation to contestant. This is prohibited by Laws 1912, p. 26, c. 3, § 7 (G. S. 1913, § 573).

That he paid the expense of providing liquors, cigars and tobacco to diverse persons, for the purpose and with the intent of influencing said persons to vote for him at said election, and that said persons did vote for him. This is prohibited by Laws 1912, p. 26, c. 3, § 10 (G. S. 1913, § 576).

That in order to promote his election he promised to appoint divers persons to public offices of honor, trust and emolument. This is prohibited by Laws 1912, p. 32, c. 3, § 22 (G. S. 1913, § 588).

That he provided means of transportation to and from the polls for divers persons, for the purpose of inducing the persons so conveyed to cast their votes for him, and that they did cast their votes for him. This is prohibited by Laws 1912, p. 28, c. 3, § 13 (G. S. 1913, § 579).

That he did "wilfully * * * pay, give and lend money and other things of value and offered, promised, and endeavored to procure money, place, employment and other valuable considerations to * * * divers * * * voters * * * in order to induce said * * * voters to cast their * * * votes for the respondent * * * and said * * * voters did give their respective votes to the respondent." This is bribery and is explicitly forbidden by Laws 1895, p. 664, c. 277, § 1 (G. S. 1913, § 612).

The contestant on these grounds contests the election of the contestee. He does not ask that he himself be seated, and his counsel on the argument before this court did not claim for him that right, but conceded that the legislature either did not or could not provide for the seating of a minority candidate. The contestee demurred to so much of the petition as sets forth the above grounds of contest. The demurrer was overruled and contestee appealed.

1. It is contended the statute gives no right to contest an election for violation of the provisions of this statute. Other sections of the act provide for a criminal prosecution for violation of the act, and provide that in the event of conviction the court shall enter a judgment forfeiting the office. Laws 1912, p. 37, c. 3, § 38 (G. S. 1913, § 604). Contestee contends that this is the only remedy contemplated by the act. It is plain that this is not the only remedy. Section 33 (599) in terms provides that the defeated candidate or any twenty-five voters "may contest the right of any person to nomination, position or office * * * on the ground of * * * violation of the provisions of this act." It provides that the contest shall be commenced by petition filed in the district court and shall be carried on according to law. This means according to the law regulating election contests in general. Section 34 (600) provides that, for certain unimportant infractions of the law, the election of such candidate shall not be void nor shall he be deprived of his office. Section

35 (601) fixes the time within which "any proceeding under this act contesting any nomination or election" must be commenced, and provides that "any proceeding to annul any nomination or election * * * must be filed in the district court of the county in which the person resides whose right to the nomination, position or office is contested."

These various provisions make very clear the legislative intent to give the right to contest an election on the ground of violation by a successful candidate of the "Corrupt Practices Act," although there may not have been any criminal prosecution or conviction. The act provides two remedies, one by criminal prosecution and conviction and a supplemental judgment of ouster, and the other by the more summary and expeditious means of an election contest.

2. It is contended that if the statute is given this construction it is unconstitutional. Article 7, § 7, of the Constitution, provides that "every person who by the provisions of this article shall be entitled to vote at any election shall be eligible to any office * * * elective by the people * * * ." The persons entitled to vote are: All male citizens, subject to certain requirements of residence, except that "no person who has been convicted of treason or felony, unless restored to civil rights * * * shall be entitled * * * to vote at any election." Section 2, art. 7. And the legislature may "exclude from the privilege of electing, or being elected, any person convicted of bribery, perjury or any other infamous crime." Article 4, § 15. The contention is that, if the act of 1912 is construed as authorizing the exclusion of a person from office for corrupt practices in the election, it adds qualifications of eligibility to office not warranted by the Constitution. It is contended that, under the constitutional provisions mentioned, no person can be deprived of his right to hold any office to which he can secure an election, no matter by what means, except upon conviction at the end of a criminal prosecution for one of the offenses mentioned in the Constitution.

We do not think the Constitution should be so construed. It must be remembered that no constitutional grant of power is necessary to authorize the legislature to pass any law. The legislature possesses all legislative power except such as the Constitution of the United

States or of the state has taken away. It possesses the power to pass a corrupt practices act, unless the state Constitution expressly or impliedly forbids it. The legislature has no power to restrict the constitutional right of a citizen to vote or to hold office or to impose conditions which shall, in any substantial manner, impede the exercise of those rights. State v. Erickson, 119 Minn. 152, 137 N. W. 385; State v. Bates, 102 Minn. 104, 112 N. W. 1026, 12 Ann. Cas. 105. But the legislature has the undoubted power to regulate the exercise of the right to vote and the right to hold office.

We think that a statute prohibiting corrupt practices in elections and preventing any candidate employing corrupt means to obtain an office does not in any proper sense impose a new test of eligibility to office at all. It simply excludes a candidate, employing unlawful means, from enjoyment of a particular office under an election which his own unlawful acts have rendered of no effect. It prevents his reaping the benefit of his own wrong. It says, not that he is ineligible to this office, but that he must use honest means to obtain it. "All such reasonable regulations of the constitutional right," says Judge Cooley, "which seem to the legislature important to the preservation of order in elections, to guard against fraud, undue influence, and oppression, and to preserve the purity of the ballot box, are not only within the constitutional power of the legislature, but are commendable and at least some of them absolutely essential." Cooley, Constitutional Limitations (7th Ed.) 907.

We would not say that every act which the legislature might forbid could be made a ground for exclusion from office of a person otherwise eligible under the Constitution. The act forbidden might have so little relation to the regulation of fair and honest elections that it would properly constitute a test of eligibility to office. The line between legitimate regulations and arbitrary tests may not be easy to define, but we do feel obliged to hold that these constitutional provisions and guaranties were never intended to prevent the passage of laws prohibiting corrupt practices in elections. The Constitution of Minnesota does not guarantee to any man the right to obtain public office by corruption, nor to enter into the possession of an office which he has used corrupt means to obtain.

We hold that the legislature has the power to pass a "Corrupt Practices Act," and to enact that the practice of corruption in securing an office shall bar a candidate from entering into the possession and enjoyment thereof.

Neither section 2 of article 7 nor section 15 of article 4, of the Constitution, both of which are quoted above, expressly or impliedly forbids the legislature from passing such legislation. The one requires and the other permits that persons convicted of certain infamous crimes be permanently excluded from "being elected" to any public office. These constitutional provisions have no application to cases of this kind. They relate only to permanent disability to hold office, and do not deprive the legislature of its power to enact laws which forbid a candidate who has never been deprived by crime of his civil rights from entering public office by means of an election which he himself has tainted with corruption. See Mason v. State, 58 Oh. St. 30, 50 N. E. 6, 41 L.R.A. 291.

3. The next question is, is this particular statute constitutional. The prohibited acts on which this contest is based are stated at the beginning of this opinion. The statute makes such acts a ground of contest. It provides as follows:

"Any twenty-five voters * * * may contest the right of any person to nomination, position or office for which said voters had the right to vote, on the ground of deliberate, serious and material violation of the provisions of this act or of any other provisions of law relating to nominations and elections. Any defeated candidate for said nomination, position or office may make said contest. Said procedure shall be commenced by petition filed in the district court of the county in which the candidate whose election is contested resides, and the contest shall be carried on according to law." Laws 1912, p. 36, c. 3, § 33 (G. S. 1913, § 599).

"When upon the trial of any action or proceedings under this act it shall appear from the evidence that the offense complained of was not committed by the candidate, or with his knowledge or consent, or was committed without his sanction or connivance, and that all reasonable means were taken by such candidate at such election, or were taken by or on behalf of the candidate, or that the offenses

complained of were trivial, unimportant or limited in character, and that in all respects his candidacy and election were free from all offensive or illegal acts, or that any act or omission of any candidate complained of arose from accidental miscalculation or from some other reasonable cause of like nature, and in any case did not arise from any want of good faith, and under the circumstances it seems to the court to be unjust that the candidate shall forfeit his nomination, position or office, then the nomination or election of such candidate shall not by reason of such offense complained of be void, nor shall the candidate be removed from nor deprived of his nomination, position or office." Laws 1912, p. 36, c. 3, § 34 (G. S. 1913, § 600).

It is urged that some of the provisions of section 34 (600) are unconstitutional as vesting the court with discretionary power to set at naught the prohibitions of the statute. We are not obliged to determine whether all of the provisions of this statute are constitutional. Section 37 of the act of 1912, which is now G. S. 1913, § 603, has relieved us of that necessity. It provides:

"In event that any provision or paragraph or part of this act shall be questioned in any court and shall be held to be invalid, the remainder of the act shall not be invalidated, but shall remain in full force and effect."

Effect must be given to this section. Courts have sometimes declared a whole statute void on account of the invalidity of a part, but in all such cases it has been on the ground that the valid and the invalid parts are so interdependent and so connected in subject-matter and purpose that it cannot be presumed the legislature would have passed the one without the other. It is a case of giving effect to the legislative intent. State v. Sullivan, 72 Minn. 126, 133, 75 N. W. 8; State v. Duluth Gas & Water Co. 76 Minn. 96, 78 N. W. 1032, 57 L.R.A. 63; Borgnis v. Falk Co. 147 Wis. 327, 133 N. W. 209, 37 L.R.A.(N.S.) 489; Pollock v. Farmers' Loan & Trust Co. 158 U. S. 601, 15 Sup. Ct. 912, 39 L. ed. 1108; Weems v. United States, 217 U. S. 349, 30 Sup. Ct. 544, 54 L. ed. 793, 19 Ann. Cas. 705; Butts v. Merchants & Miners Transportation Co. 230 U. S. 126, 33 Sup. Ct. 964, 57 L. ed. 1422; 36 Cyc. 976, 977. But where the legislature in plain terms expresses an intent that all portions

of the act not in themselves invalid shall stand and that the act shall be enforced, as far as may be, even though it may not be valid in its entirety, the reason of the rule no longer exists and the rule itself fails. The court must give effect to the legislative intent so expressed. We know of no good reason why the legislature may not declare its intention that one part of a law may be separated from the balance, for the very purpose of saving the unobjectionable parts from being declared unconstitutional. We conceive that the rule to be applied under such a statute is that, if part of a law is unconstitutional, the remaining portion must nevertheless be sustained and given effect if enough is left to constitute an enforceable law. This view we believe is sustained by substantially all the authorities. State v. Carter, 174 Ala. 266, 56 South. 974; Ex parte Schuler, 139 Pac. (Cal.) 685, 689; State v. Claussen, 65 Wash. 156, 197, 117 Pac. 1101, 37 L.R.A.(N.S.) 466; Borgnis v. Falk Co. 147 Wis. 327, 357, 133 N. W. 209, 37 L.R.A.(N.S.) 489.

If section 34, p. 36, Laws 1912 (G. S. 1913, § 600), be wholly eliminated, the balance of the act constitutes an enforceable law. Section 33 (599) in itself furnishes a complete and workable rule of procedure in case of a contest. There can be little doubt as to the constitutionality of this section. We see no objection to limiting the operation of the statute to such acts as are "deliberate." The term has a well-defined meaning. The provisions giving the right of contest, on the ground only of "serious and material" violations of the act, mean, not that the court may disregard any of the provisions of the statute as not serious or material, but that acts of the candidate which are immaterial or trifling shall not be deemed subject to the prohibitions of the statute. There is no constitutional objection to such provisions.

Nor is it necessary to determine whether every ground of contest provided by this statute can be sustained as a regulation of elections. The fact is the petition alleges the commission by contestee of specific acts which are inherently corrupt and immoral, and violative of the purity of elections. The statute makes these same acts a ground for contest. We do hold that these provisions of the statute are constitutional and valid. There is nothing in the majority or minority

126 M.—25.

opinions in State v. Bates, 102 Minn. 104, 112 N. W. 1026, 12 Ann. Cas. 105, in conflict with this ruling. The petition states a cause of action, and the order overruling the demurrer is affirmed.