ALASKANS FOR LEGISLATIVE REFORM, and Edward A. Burke, Jr., Appellants,

v.

STATE of Alaska, and Lt. Governor John B. Coghill, Appellees.

No. S–5717.

Supreme Court of Alaska.

Dec. 30, 1994.

Mary Louise Molenda, Ruskin & Molenda, Anchorage, for appellants.

Virginia B. Ragle, Asst. Atty. Gen., Bruce M. Botelho, Atty. Gen., Juneau, for appellees.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

### OPINION

PER CURIAM.

■ The appended opinion of the Honorable Brian Shortell, Superior Court Judge, is adopted as the opinion of this court.[1] The judgment is AFFIRMED.

1. The opinion has been edited in conformity with

## APPENDIX

**IN THE SUPERIOR COURT FOR THE STATE OF ALASKA THIRD JUDICIAL DISTRICT**

ALASKANS FOR LEGISLATIVE REFORM, AND EDWARD A. BURKE, JR., Plaintiffs,

vs.

STATE OF ALASKA, AND LT. GOVERNOR JOHN B. COGHILL, Defendants.

Case No. 3AN–92–7079 CI

### *MEMORANDUM DECISION AND ORDER*

Article II, section 2 of the Alaska Constitution sets qualifications for legislators. It provides:

A member of the legislature shall be a qualified voter who has been a resident of Alaska for at least three years and of the district from which elected for at least one year, immediately preceding his filing for office. A senator shall be at least twenty-five years of age and a representative at least twenty-one years of age.

Article II, section 3 of the Alaska Constitution establishes terms of office for legislators: "The term of representatives shall be two years, and the term of senators, four years. One-half of the senators shall be elected every two years."

Disqualifications for legislators are also set by the constitution. Article II, section 5 provides that no legislator may hold "any other position of profit under the United States or the State," and no legislator may obtain "any other position of profit" which was created or for which the salary or benefits were increased during the term for which the legislator was elected and for one year thereafter. Also, certain convicted felons and persons of "unsound mind" are disqualified in article V, section 2.

The plaintiffs in this case support an initiative proposal which would, if passed by state voters, limit terms of members of the Alaska

Supreme Court procedural standards.

legislature to two consecutive senate terms, four consecutive house terms, or eight consecutive years in any combination of house or senate service. Terms would be "consecutive" under the initiative unless they were at least eight years apart.

Acting on the advice of the attorney general, Lieutenant Governor Coghill denied certification of the initiative application because he believed that the proposed term limits could only be established by constitutional amendment.[1] The plaintiffs now challenge that denial, contending that the state constitution does not require a constitutional amendment to limit legislative terms. They seek a declaration that the initiative process may be used to establish term limits and an order directing the Lieutenant Governor to certify the initiative application.

The issue raised, therefore, is clear: Does the state constitution allow the use of the initiative process to establish term limits for state legislators? Although this issue has not been decided in Alaska, debate on this and similar questions is not new. Federal and state courts have reviewed and resolved cases raising virtually identical issues. In addition, this case arises in the context of extensive historical development. Thus, although the newly-arisen term-limits movement in Alaska and the United States has given the debate renewed attention, analytical principles leading to appropriate resolution of the issues raised in this case are well-established.

Two somewhat conflicting principles are central to this case. The first is the general principle that the constitution is the basic law of the state; the second is that constitutional and statutory principles should be liberally construed to further the goal of allowing the people to vote and express their will.[2] Consideration should be given to interpretations that would render an initiative constitutional,[3] but if a proposed initiative cannot be reconciled with state constitutional provisions, the right of the people to legislate by initiative must give way to constitutional restrictions.[4] And although liberal construction of initiative proposals is the general rule, constitutional limitations on the initiative power must also be broadly interpreted.[5] The judicial task in this case, therefore, is to determine the meaning and scope of the Alaska Constitution's legislative qualifications provisions. If those provisions are exclusive, the people have no power to enact term limits which would conflict with them; if they are not exclusive, the initiative proposal should be certified.[6]

Article II, sections 2, 3, and 5 of the Alaska Constitution contain no language limiting the number of terms a legislator may serve, although other constitutional terms are explicitly limited.[7] The constitution gives the legislature the power to impose additional qualifications and terms for judicial officers, but it does not do so for any other branch of the state government. This suggests that the framers of the state constitution did not intend to include term limits as qualifications for legislative office.

1. The Alaska Constitution cannot be amended by initiative. *State v. Lewis*, 559 P.2d 630 (Alaska 1977).

2. *Boucher v. Engstrom*, 528 P.2d 456, 462 (Alaska 1974).

3. *Id.*, at 462.

4. *Citizens Coalition v. McAlpine*, 810 P.2d 162, 168 (Alaska 1991).

5. *Id.*

6. Plaintiffs suggested at oral argument that judicial review might be deferred until after a vote on the proposed initiative. However, this is not a case in which time pressures or difficult constitutional questions presented cannot properly be decided prior to the initiative's submission to the voters. *See Whitson v. Anchorage*, 608 P.2d 759, 762 n. 4 (Alaska 1980). In fact, this case has been brought to the decisional stage by both parties with the intention of obtaining pre-election dispositive review. There is no valid reason for delay, and there are good reasons for defining the constitutional limits on this initiative proposal if such limits should be imposed.

7. Consecutive terms of the governor are limited to two full successive terms by article III, section 5, and the chief justice of the supreme court cannot serve any consecutive terms because that would be prohibited by article IV, section 2(b) of the constitution.

Discussions by members of the Alaska constitutional convention would also seem to indicate their belief that qualifications set out in the constitution would not be subject to change by the legislature or by initiative absent specific constitutional authority.[8] The delegates' statements should also be placed in context; they had at the time of the constitutional convention a wealth of political and judicial history to support their remarks.[9]

Political debate regarding the necessity of fixed and unmodifiable (except by constitutional amendment) legislative qualifications dates back to sixteenth century England. "[O]n the eve of the Constitutional convention, English precedent stood for the proposition that 'the law of the land had regulated the qualifications of members to serve in parliament' and those qualifications were 'not occasional but fixed.'"[10] The same proposition was strongly stated by American constitutional delegates both before and after the federal constitutional convention. James Madison, for example, argued at the convention that allowing the federal legislature to establish its own qualifications would be to vest "an improper and dangerous power in the Legislature. The qualifications of electors and elected were fundamental articles in a Republican Government and ought to be fixed by the Constitution."[11]

After the constitutional convention, Alexander Hamilton stated the principle explicitly: "The qualifications of the persons who may choose or be chosen, as has been remarked upon other occasions, are defined and fixed in the Constitution, and are unalterable by the legislature."[12]

Alaska delegates voiced similar opinions at the state constitutional convention. Mr. Hellenthal: "Whatever we agree on here will be the qualifications which will not be subject to change by the legislature." Mr. McLaughlin: "I don't believe that the legislature can change these qualifications or add to them."[13]

These delegates had ample support for their opinions. Beyond the historical analysis and fundamental political doctrine their remarks spring from, judicial opinion on this constitutional issue was almost unanimously in agreement with their remarks. At the time of Alaska's constitutional convention, in fact, the view that constitutionally-prescribed qualifications were exclusive had prevailed in nearly every state court which had considered the issue prior to the adoption of Alaska's constitution in 1956. *Buckingham v. State ex rel. Killoran*, 42 Del. 405, 35 A.2d 903 (1944); *see also State ex rel. Palagi v. Regan*, 113 Mont. 343, 126 P.2d 818 (1942); *Imbrie v. Marsh*, 3 N.J. 578, 71 A.2d 352 (1950).[14]

It can be argued, of course, that the prevailing view was wrong, that later political and judicial developments have shown the flaws in its logic, and that the state constitution should not be interpreted consistently with it. This argument is, in fact, at the center of plaintiffs' attack on Lieutenant Governor Coghill's refusal to certify the initiative.

8. *See* memorandum in support of state's cross-motion for summary judgment at 11, 12. The people's power to enact legislation by initiative is no greater than that of the legislature. Alaska Constitution, article XI, section 1; *McAlpine v. University of Alaska*, 762 P.2d 81, 95 (Alaska 1988). Thus, any law that would be invalid if enacted by the legislature would also be invalid if enacted by initiative. *Citizens Coalition v. McAlpine*, 810 P.2d at 168.

9. The political history is thoroughly described in *Powell v. McCormack*, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969).

10. *Id.* at 528, 89 S.Ct. at 1967–68.

11. *Id.* at 533, 89 S.Ct. at 1970.

12. *Id.* at 539, 89 S.Ct. at 1973 (citing the Federalist Papers 371 (Mentor Ed. 1961)).

13. State's memorandum at 11.

14. Later state cases continued this trend. *See Whitney v. Bolin*, 85 Ariz. 44, 330 P.2d 1003 (1958); *Opinion of the Justices*, 245 A.2d 172 (Del.1968); *Maloney v. Kirk*, 212 So.2d 609 (Fla. 1968); *Pavlak v. Growe*, 284 N.W.2d 174 (Minn. 1979); *Labor's Education and Political v. Danforth*, 561 S.W.2d 339 (Mo.1977). *See also Plugge v. McCuem*, 310 Ark. 654, 841 S.W.2d 139, 143 (1992) (Dudley, J., dissenting).

Plaintiffs contend that "terms" are "preconditions" and not "qualifications." Both words are similar in meaning, and the dictionary definition of the word "qualification" does little to resolve this quandary.[15] Courts and commentators construing the word tend to slide past this definitional problem when deciding whether a particular requirement is or is not a "qualification."

For example, in 1969 the United States Supreme Court, in *Powell v. McCormack*,[16] decided that the House of Representatives could not exclude a duly-elected member even though it found that he had committed illegal and fraudulent acts during his previous term. The court held that as Powell "was not ineligible to serve under any provision of the Constitution, the House was without power to exclude him from its membership."[17] "Qualifications" are not defined in the opinion, but they are equated with "eligibility" or "standing qualifications."[18]

And in *Storer v. Brown*,[19] the Court, in a footnote, held that no unconstitutional qualifications were imposed by a California statute which required independent candidates for Congress and president and vice president to be politically disaffiliated for at least one year before the election and to have filed nomination papers signed by at least five percent but not more than six percent of the vote cast in the preceding general election. Once again the Court, although recognizing that a candidate who did not meet the statutory test would be "disqualified," did not explain why the statute's requirements were not "additional qualifications."[20]

State courts grappling with the same issue have also been wary of trying to define the word.[21] As the writer of a recent law review article has said:

> No court has explicitly defined the term "qualification" in an election context. . . .

Courts have approached the question of what constitutes "qualifications" for office in two different ways. First, some courts directly confront the action (usually a state statute) limiting candidates' and voters' rights. They determine if the action rises to such a level as to constitute a qualification for office. If it does, they strike it down as unconstitutionally adding a "qualification" for office per *Powell*. If the statute's provisions do not rise to the requisite level, it is deemed constitutional under the state regulation clause. . . . State courts addressing state election statutes have also uniformly addressed the issue of qualifications directly. . . .

Courts have also examined the issues of qualifications by analyzing whether particular state election statutes violate the equal protection clause of the fourteenth amendment or the first amendment free speech clause. . . .[22]

Thus, under the direct approach, although "qualifications" may not be defined precisely, the ultimate issue can be resolved by determining whether, in view of the language of the Alaska Constitution, the historical context of its enactment, and pertinent case law, the term limits imposed by plaintiffs' initiative rise to "such a level as to constitute a qualification for office."

---

**15.** "Something that qualifies or restricts . . . an endowment or acquirement that fits a person (as far as office) . . . a condition precedent that must be complied with (as for the attainment of a privilege). . . ." Webster's Third New International Dictionary (1961 ed.). This definition is as helpful as Woody Allen's dictionary definition of a "lascivious adulterer": "One who engages in lascivious adultery."

**16.** 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969).

**17.** *Id.* at 550, 89 S.Ct. at 1979.

**18.** *Id.*

**19.** 415 U.S. 724, 748, 94 S.Ct. 1274, 1287–88, 39 L.Ed.2d 714 (1974).

**20.** *Id.* at n. 16.

**21.** *See* cases cited p. 963, above.

**22.** Latz, *The Constitutionality of State–Passed Congressional Term Limits*, 25 Akron Law Review 155, 177 (1991). Although this case may also involve issues other than the "direct" qualifications clause approach, the parties have not briefed or argued those issues and I shall not address them in this decision.

This initiative, if enacted, would impose very substantial limitations on the right of the people to choose their lawmakers and the right of candidates to run for office. It would categorically disqualify certain candidates for a period of eight years. It does not, as some court-approved statutes do, further the purpose of valid regulatory efforts such as campaign-disclosure laws [23] or corrupt-practices laws.[24] It would bar all candidates not eligible for office according to its terms. The disqualification imposed would be direct and attributable to a desire to discourage incumbency rather than to regulate the process of elections,[25] or the conduct of candidates holding other governmental offices,[26] or to achieve on the state level the essential purpose of a provision of the constitution other than the qualifications clause.[27] It would impose what one court has called a "flat disqualification," [28] one which the candidate cannot avoid even, for example, by a write-in vote.[29]

The Alaska Supreme Court has struck down as violative of the federal constitution's qualifications clause a state statute which would have imposed a categorical barrier to candidacy for federal office. In Benesch v. Miller, 446 P.2d 400 (Alaska 1968), the court concluded that the Alaska legislature could not enact a law that would invalidate all write-in votes for a senatorial candidate who had lost in his party's most recent primary election. Thus, in answering this federal qualifications question, the court used the so-called "direct" approach, and unequivocally rejected the offending statute. It would seem unlikely that the court would be any less critical of the initiative here in analyzing its effect under the state qualifications clause.

The Alaska court has recognized the distinction between statutes which "eliminate" a candidate,[30] and those which would void a particular election because of corrupt practices committed by a successful candidate in that election. In State v. Marshall, 633 P.2d 227 (Alaska 1981), the court upheld a statutorily-mandated forfeiture of office for violations of Alaska's campaign disclosure law, saying:

> Our premise is that a valid election is an obvious, if unstated, constitutionally-based eligibility requirement for membership in a legislative body [citing cases]. The legislature's authority to proscribe certain campaign practices and to promote fair elections ... logically and necessarily implies the power to have unfair elections set aside.[31]

This distinction between temporary or one-time disqualification of a candidate versus permanent or long-term disqualification is a thread that runs through the qualifications-clause cases. Thus, a state "resign to run" statute has been upheld because it did not actually bar a candidate from office. Rather, it simply required the candidate to sacrifice the security of the public office presently held for the prospect of obtaining a different position.[32] And corrupt-practices statutes which void elections during which the violations occur have been held to be constitution-

**23.** See State v. Marshall, 633 P.2d 227 (Alaska 1981); Secretary of State v. McGucken, 244 Md. 70, 222 A.2d 693 (1966).

**24.** See Saari v. Gleason, 126 Minn. 378, 148 N.W. 293 (1914); State ex rel. LaFollette v. Kohler, 200 Wis. 518, 228 N.W. 895 (1930).

**25.** See Storer v. Brown, 415 U.S. at 746 n. 16, 94 S.Ct. at 1286–87 n. 16.

**26.** See Joyner v. Mofford, 706 F.2d 1523 (9th Cir.1983).

**27.** See Signorelli v. Evans, 637 F.2d 853 (2nd Cir.1980) ("resign to run" regulatory scheme in New York State protects the integrity of a branch of state government by the same principle of incompatibility the Constitution has endorsed for the national government).

**28.** Stack v. Adams, 315 F.Supp. 1295, 1298 (N.D.Fla.1970).

**29.** See Storer v. Brown, 415 U.S. at 736 n. 7, 94 S.Ct. at 1282 n. 7.

**30.** Benesch, 446 P.2d at 403.

**31.** 633 P.2d at 232.

**32.** Oklahoma State Elections Board v. Coats, 610 P.2d 776, 780 (Okla.1980). Contra Stack v. Adams, 315 F.Supp. 1295, 1298 (N.D.Fla.1970).

al,[33] while similar statutes which would have imposed substantial future periods during which the violators would have been disqualified from candidacy or election have been struck down.[34]

When the plaintiffs' initiative is analyzed appropriately, it is clear that the limitations it would impose on candidates' and voters' rights are "qualifications" as that term has been used by constitutional delegates, political thinkers, legal scholars, and courts. The barriers it would erect against incumbency are constitutionally forbidden. The Alaska Constitution sets the qualifications for legislative office. Term limits are not included in those qualifications. To the extent that incumbency might be a political evil, the constitution provides a method—frequent elections—for discouraging it. If this method should prove to be inadequate, the only way that term limits might be imposed would be a constitutional amendment.

Constitutional doctrine as passed down to us through the history of this country, as adopted by the state constitution, and as it exists today, will not allow the term limits proposed. The lieutenant governor's decision to deny certification of the initiative was correct. Therefore, plaintiffs' motion for summary judgment must be denied and defendants' motion granted.

It is so ordered.

DONE this 21st day of May, 1993, at Anchorage, Alaska.

/s/ Brian Shortell
BRIAN SHORTELL
Superior Court Judge

---

**33.** *Saari v. Gleason,* 126 Minn. 378, 148 N.W. 293, 295 (1914); *State ex rel. Lafollette v. Kohler,* 200 Wis. 518, 228 N.W. 895 (1930). *But see Maloney v. Kirk,* 212 So.2d 609 (Fla.1968).

**34.** *Buckingham v. State ex rel. Killoran,* 42 Del. 405, 35 A.2d 903 (1944); *Pavlak v. Growe,* 284 N.W.2d 174 (Minn.1979); *Labor's Int'l and Political v. Danforth,* 561 S.W.2d 339 (Mo.1977); *State ex rel. Palagi v. Regan,* 113 Mont. 343, 126 P.2d 818 (1942).